LETTS, GAVIN K., Associate Judge.
This appeal stems from the circuit court’s decision that scheduled successive meetings between a school superintendent and individual members of his school board did not violate the Government in the Sunshine Act. We reverse.
We are again asked to rule on the applicability of chapter 286.011 of the Florida Statutes (1977), the pertinent language of which is deceptively simple:
“(1) All meetings of any board . at which official acts are to be taken are declared to be public meetings open to the public at all times . . . .”
The Orange County school board’s staff was faced with a major redistricting problem involving the transfer of some 6000 students to other schools. The superintendent candidly admitted that he wanted to avoid the uproar which would unquestionably attend the public airing of each possible alternative, until his staff had a crystallized plan to offer for approval. In addition, he was equally forthright in confessing that he “was quite aware of the Sunshine Law and . very diligent in fulfilling [his] responsibility in meeting [its] requirements
To solve the dilemma, information was adduced to the effect that conversation between staff and a single board member would not be a “meeting” under decided *580 case law. We agree there is law to this effect. See Mitchell v. School Board of Leon County, 335 So.2d 354 (Fla. 1st DCA 1976); Hough v. Stembridge, 278 So.2d 288 (Fla. 3d DCA 1973), and Florida Parole and Probation Commission v. Thomas, 364 So.2d 480 (Fla. 1st DCA 1978). We also agree that the board’s staff (which, of course, includes the superintendent) is not subject to the provisions of the Sunshine Law. See Chapter 286.011(1), Florida Statutes (1977) and Bennett v. Warden, 333 So.2d 97 (Fla. 2d DCA 1976). Consequently we agree that scheduled discussions between staff and a single member of a board frequently are not “meetings” under the act. This conclusion is supported by, and has even been expanded by, our own Supreme Court in the recent decision of Occidental Chemical Co. v. Mayo, 351 So.2d 336, 341 (Fla.1977) wherein the court stated:
“[W]e reject [the] broad-brush argument that all meetings between the commissioners [1] and their staff must be open to the public.”
The problem in the case now before us is that this superintendent did much more and devised a plan by which his board members would come visit his office in rapid-fire succession to discuss, exclusively, this major redistricting problem. Thus on January 30, 1978, the board proceeded in convoy, but out of sight of each other, to the superintendent’s office, the first at 8:30 A.M., the second at 10:30 A.M. and the third at 12:30 P.M. Two days later three more members did the same.[2] Substantially the same procedure was repeated five times more, ending on April 26th. Public announcement of the final proposed resolutions, which included the reclassification of Cherokee Junior High (from whose ranks the appellants are drawn), was then made two days later, on April 28th. Simultaneously, the resolutions were placed on the agenda of the board for final action eleven days after that.
The superintendent is adamant that he did not act as a go-between during these discussions and denies that he told any one board member the opinions of any of the others. He insists that he only presented and discussed the various options with each member and generally obtained their feedback. He also denies that the board members directed him to make any changes to, or indicated which way they would vote on, the proposals.
Both the memos of the school board attorney and the candid testimony of the superintendent lead us to the conclusion that what transpired here was not so much a willful violation of the Sunshine Law, but rather an attempt not to violate it, yet keep the various options secret. We can well believe that premature publication of what were only tentative solutions would have filled the air with vituperation from outraged parents, much of which would turn out in the end to be unjustified. However, that is not the point. School boards are not supposed to conduct their business in secret even though it may all be for the best at the end of the day and notwithstanding that the motives are as pure as driven snow. Moreover of the several tentative secret options, one certainly was not discarded, namely the re-classification of Cherokee Junior High, a result totally unacceptable to those affected.
While we agree that one swallow a summer cannot make, we are convinced that the scheduling of six sessions of secret discussions, repetitive in content, in rapid-fire seriatim and of such obvious official portent, resulted in six de facto meetings by two or more members of the board at which official action was taken. As a consequence, the discussions were in contravention of the Sunshine Law. Further, the frank admission as to the reason for this modus operandi leads us to conclude that in effect “the [board] met in secret [and] used staff members as intermediaries in order to *581 circumvent public meeting requirements.” Occidental, supra, at p. 341. “Our duty is to interpret this law as it is written, and, if possible, do so in a manner to prevent its circumvention.” City of Miami Beach v. Berns, 245 So.2d 38 (Fla.1971).
As for any argument that not all public business can be conducted center stage under the critical glare of the media’s spotlights, lest on occasion the publicity reduce the item under discussion to absurdum or cause unnecessary public uproar, we would respond twofold.
First, such arguments should be addressed to the legislature not the courts, for we are “without power to enact law or to pass upon its wisdom or folly . . . our duty is to construe or interpret it . . .” Wolf v. Commander, 137 Fla. 313, 188 So. 83, 85 (1939).
Second, deliberations by a school board on whether a school is to be closed, are very much a matter of public concern, never mind the Sunshine Law. Outcries by adversely affected special interest groups are commonplace whenever any form of legislation is proposed. There is no reason why school boards should be excluded simply because secrecy was necessary to avoid, in the words of the superintendent, “disfunc-tional or disruptive . . . stress or distress in the community.”
As we have suggested, the board, its attorney and the superintendent all appear to have had in mind, not willful violation so much as legal circumvention or, by analogy if you will, legal tax avoidance such as we all engage in. This, coupled with prior case law, causes us to discern no criminal culpability from the record now before us.
By this decision we do not require that Cherokee School be re-opened immediately as a junior high. Indeed we recognize the possibility that the board, upon reconsideration, may decide on the same course of action as before. However, what we do require is that the entire redistricting problem, and all the supporting data and input leading up to the resolutions which are the subject matter of this cause, be re-examined and re-discussed in open public meetings. The brief eleven days previously allowed for the aggrieved parties to air their objections were totally insufficient to render the error of twelve weeks of secret negotiations, harmless.
REVERSED AND REMANDED IN ACCORDANCE HEREWITH.
DOWNEY, JAMES C., Associate Judge, concurs.
MOORE, JOHN H., II, Associate Judge, dissents without opinion.

. We emphasize the plural.

. The remaining member of the board was strangely uninvited to many of these conversations. Appellant alleged this was because he was opposed to the plan. However no matter the reason, his absence is immaterial to our conclusion.