647 So.2d 857 (1994)
MONROE COUNTY, Florida, a political subdivision of the State of Florida, and Pigeon Key Preservation Foundation, Inc., a Florida corporation, Appellants,
v.
PIGEON KEY HISTORICAL PARK, INC., a Florida corporation, Appellee.
Nos. 93-2308, 93-2298.
District Court of Appeal of Florida, Third District.
July 12, 1994.
Opinion Denying Rehearing and Certification January 11, 1995.
*858 Morgan & Hendrick, and James T. Hendrick, Key West, for appellant, Monroe County.
*859 Michael Halpern, Key West, for appellant, Pigeon Key Preservation Foundation, Inc.
Sharon I. Hamilton, Marathon, for appellee.
Before NESBITT, COPE and GERSTEN, JJ.
GERSTEN, Judge.
Appellants appeal the trial court's invalidation of the Monroe County Board of County Commissioner's 30-year lease with the Pigeon Key Preservation Foundation. This appeal is based upon alleged violations of section 286.011, Florida Statutes (1993), commonly known as the Sunshine Law. We reverse.
The issue is, under the Florida Constitution and Florida Supreme Court precedent, did governmental meetings held without public notice invalidate a final governmental action taken in the sunshine or did the subsequent corrective actions cure the Sunshine Law violations?
The Monroe County Board of County Commissioners (the Commission) issued a "Request for Proposals" to restore and preserve Pigeon Key, an offshore island located near Marathon, Florida. The Commission selected the proposal of the Pigeon Key Preservation Foundation (the Foundation), who seek to establish a marine environmental education and research center on Pigeon Key. The Commission then directed its Pigeon Key Advisory Committee (the Advisory Committee) to negotiate a lease agreement for the use of Pigeon Key with the Foundation.
Upon a request by the Advisory Committee for community input, three Marathon business organizations issued a joint resolution urging a number of recommendations. These recommendations included that the lessee "work with local tourist-related businesses to make [Pigeon Key] an on-going tourism attraction that will encourage visitors to stay at local hotels and make use of local restaurants, shops and businesses."
The Advisory Committee held its first two meetings without proper public notice. Minutes of these meetings detail the Advisory Committee's recommendations for the lease and for the Master Plan, the Foundation's overall development plan for Pigeon Key. Following these meetings, the Advisory Committee held a third and final meeting which had proper public notice.
Thereafter, the Commission held a public hearing regarding the lease on June 15, 1993, at which over 30 members of the community spoke. At the hearing, the County Attorney stated that tourism could not become a primary use of Pigeon Key because the Key was purchased by a bond issue through ad valorem taxes and its uses must remain public. The Commission tabled the vote on the lease and urged the Foundation and community members promoting a tourist use to meet and negotiate a joint plan.
Following these meetings, the County Attorney and the attorney for the Foundation agreed to numerous changes in the lease. The tourist use provision had been incorporated verbatim from the joint resolution and was the Advisory Committee's primary addition to the lease. Because tourist use of Pigeon Key violated the law, that provision was eliminated.
On July 29, 1993, the Commission reconvened for its second public hearing on the Pigeon Key lease. Minutes of the unnoticed Advisory Committee meetings were read into the record. After approximately 20 members of the public spoke, the Commission recommended and approved additional changes to the lease. The Commission then defeated a motion to reject all proposals for Pigeon Key and readvertise the "Request for Proposals." At the end of the hearing, the Commission approved the amended lease with the Foundation by a 3-2 vote.
Appellee, Pigeon Key Historical Park, filed an emergency petition for a temporary injunction seeking: 1) to enjoin the Commission from acting on the Advisory Committee's recommendations at its July 29, 1993 meeting, or 2) to set aside any action taken at that meeting which was based upon a Sunshine Law violation. The trial court declined to consider the emergency request and a hearing was set after the Commission's meeting. Following the hearing, the trial court invalidated the lease, finding that the *860 reading of the minutes into the record and the subsequent public hearings did not cure the Sunshine Law violations.
Appellants rely on Tolar v. School Bd., 398 So.2d 427 (Fla. 1981), asserting that the Advisory Committee's failure to notice its first two meetings was cured by its own subsequent public meeting, publication of the minutes of the unnoticed meetings, two subsequent public hearings held by the Commission, and the Commission's deletion of the Advisory Committee's principal addition to the lease of a tourist-oriented use. Appellee relies on Town of Palm Beach v. Gradison, 296 So.2d 473 (Fla. 1974), contending that the Sunshine Law violations have not been cured because the unnoticed Advisory Committee meetings were initial steps in the decision-making process of an issue that deserves full and complete public input.
Originally codified by statute, the Sunshine Law recently became part of the Florida Constitution. Article 1, section 24(b) of the Florida Constitution, adopted in 1992, provides:
All meetings of any collegial public body of the executive branch of state government or of any collegial public body of a county, municipality, school district, or special district, at which official acts are to be taken or at which public business of such body is to be transacted or discussed, shall be open and noticed to the public. .. .
Section 286.011(1), Florida Statutes (1993), states that:
All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting.
The Sunshine Law penalizes members of governmental bodies who meet in secret. § 286.011(3), Fla. Stat. (1993). Minutes of meetings of such boards or commissions are to be promptly recorded and open to public inspection. § 286.011(2), Fla. Stat. (1993).
Town of Palm Beach v. Gradison, 296 So.2d 473 (Fla. 1974), articulates the purpose of the Sunshine Law: "to prevent at non-public meetings the crystallization of secret decisions to a point just short of ceremonial acceptance... . The statute should be construed so as to frustrate all evasive devices." Id. at 477. Under Gradison, a "[m]ere showing" of a Sunshine Law violation renders final governmental action void ab initio. Id.
Tolar v. School Bd., 398 So.2d 427 (Fla. 1981), however, provides that Sunshine Law violations can be cured by independent, final action in the sunshine that is "not merely a ceremonial acceptance ... and ... a perfunctory ratification of secret decisions." Id. at 429. Tolar recedes from Gradison and distinguishes it as a case in which a town council summarily approved planning committee recommendations in a purely ceremonial meeting. Id. Under Tolar, a full, open public hearing can cure a prior violation. Spillis Candela & Partners, Inc. v. Centrust Sav. Bank, 535 So.2d 694, 695 (Fla. 3d DCA 1988).
Here, the Commission did not ceremonially accept or perfunctorily ratify the Advisory Committee recommendations. First, open public hearings followed the unnoticed meetings. The Advisory Committee held one public meeting after the Sunshine Law violations, and the Commission held two public hearings at which over 50 people testified. Rather than voting at the end of the first public hearing, the Commission tabled its vote until a subsequent public meeting and urged the Foundation and the supporters of a primary tourist use of Pigeon Key to meet and seek a joint plan. Even before voting on the lease at the conclusion of the second public hearing, the Commission voted on whether to readvertise for new proposals for the use of Pigeon Key.
Second, an effort was made to make available to the public the minutes of the unnoticed meetings. The minutes from these meetings, which specified the Advisory Committee's recommendations to the lease, were *861 read into the record at the second public hearing.
Third, the lease the Commission approved was markedly different from that recommended by the Advisory Committee. The Advisory Committee's most substantial recommendation was its addition of tourist promotion as a use of Pigeon Key, which the Commission excised from the final lease it approved.
Finally, most of the lease negotiations were conducted after the Advisory Committee concluded its work. They were conducted between the County Attorney and the Foundation attorney, neither of whom were members of the Advisory Committee.
This court is concerned that unnoticed governmental meetings were held here. We are reminded of the importance of open meetings to democratic government from Gradison:
Every meeting of any board, commission, agency or authority of a municipality should be a marketplace of ideas, so that the governmental agency may have sufficient input from the citizens who are going to be affected by the subsequent action of the municipality... . [O]pen meetings instill confidence in government.
296 So.2d at 475.
Our new constitutional amendment, now article 1, section 24(b) of the Florida Constitution, expresses a recent public mandate reaffirming the Sunshine Law and extending its reach into every meeting at which public business is to be transacted or discussed. Yet, the amendment neither provides for its own enforcement nor counters Tolar's standard of remediation.
Tolar effectively sounded the death knell of an unadulterated Sunshine Law.[1]See Tolar, 398 So.2d at 432 (Adkins, J., dissenting). Governmental actions will not be voided whenever governmental bodies have met in secret where sufficiently corrective final action has been taken. Id. at 428-29.
Because we are bound by Tolar, and because subsequent governmental actions cured the Sunshine Law violations here, we reverse the determination of the trial court and validate the lease between the Monroe County Board of County Commissioners and the Pigeon Key Preservation Foundation.
Reversed.
NESBITT, J., concurs.
COPE, Judge (dissenting).
I respectfully dissent. The trial court after an evidentiary hearing made the explicit factual finding that the action taken by the Monroe County Commission did not cure the Sunshine Law violations. The trial court's factual findings are backed up by the evidence, and the court correctly applied the Sunshine Law. The majority position essentially nullifies the new constitutional sunshine provision, and is contrary to Town of Palm Beach v. Gradison, 296 So.2d 473 (Fla. 1974).

I
At the 1992 general election Florida voters ratified article I, section 24 of the Florida Constitution,[1] which elevated to constitutional status the public's right to government in the sunshine. Article I, section 24 provides, in part:
Section 24. Access to public records and meetings. 
... .
(b) All meetings of ... any collegial public body of a county ... at which official acts are to be taken or at which public business of such body is to be transacted or discussed, shall be open and noticed to the public ... except with respect to meetings *862 exempted pursuant to this section or specifically closed by this Constitution.
The new constitutional right of public access is self-executing. The obvious intent of the electorate was to strengthen Florida's Government in the Sunshine Laws, including the Open Meetings Law. See § 286.011, Fla. Stat. (1993). Injunctive relief is available to enforce the Open Meetings Law; actions taken in violation of the law are not binding. Id. § 286.011(1), (2).

II
The Monroe County Commission decided to grant a thirty-year exclusive lease for the use of Pigeon Key, an island located at the midpoint of the historic Seven Mile Bridge. The County Commission appointed the Pigeon Key Advisory Board and directed it "to negotiate a lease with the Pigeon Key Foundation, Inc., and report to the County Commission." (Final Order, para. 1). It is well settled that an advisory body like the Pigeon Key Advisory Board is governed by the Open Meetings Law. All parties agree on this point.
It is also well settled that a body covered by the Open Meetings Law must give proper notice of its meetings, so that the public will have an opportunity to attend. The new article I, section 24 to the Florida Constitution explicitly so provides. Art. I, § 24(b), Fla. Const. ("shall be open and noticed to the public"). The requirement of public notice also existed under earlier case law. See Hough v. Stembridge, 278 So.2d 288, 291 (Fla. 3d DCA 1973).
In the present case "all parties agree that there were violations of [the] Florida Sunshine Law, Statute 286.011 on January 27 and March 12, 1993, by the Pigeon Key Advisory Board ... for although the meetings were open to the public, they were not advertised or properly noticed." (Final Order, para. 3). There was a third meeting on June 2, 1993 which was properly noticed.
On June 15, 1993 the proposed lease was submitted to the County Commission for approval. At the June 15 meeting there was input from various members of the public, advisory committee members, the Foundation, and county staff. The County Commission deferred action and referred the matter to the county staff for further modifications to the lease.
The trial court explicitly found that as of June 15, the County Commission was not made aware that the Pigeon Key Advisory Board meetings had been conducted in violation of the Sunshine Law.
Open meeting violations were not disclosed or the subject of discussion during this [County Commission] meeting. This [County Commission] hearing was not held with the heightened awareness that the [advisory] committee's recommendations concerning the negotiated lease [were] the product of Sunshine Law violations since disclosure of [same] had not yet been made... . For this reason the court discounts the overall remedial value of the June 15 [County Commission] hearing.
(Final Order, para. 4).
The county staff undertook to modify the lease. These modifications were accomplished in private session. The matter was not referred back to the Pigeon Key Advisory Board, nor was any of the modification work on this lease accomplished in public session.
The Pigeon Key lease was scheduled to be considered again at the County Commission's July 29, 1993 meeting. On July 26, 1993 Pigeon Key Historical Park, Inc., filed an emergency petition for a temporary injunction. Pigeon Key Historical Park "is a non-profit corporation formed by some Marathon, Florida residents to promote the use of the island." (Final Order, at 1). The plaintiff's petition asserted that the work of the Pigeon Key Advisory Board had been conducted in violation of the Open Meetings Law. The petition requested that the court enjoin the County Commission from taking final action on the Pigeon Key lease. Alternatively, the petition requested that if the County Commission took action on the lease, the court should set the lease aside under section 286.011, Florida Statutes. The trial court denied the temporary injunction "reasoning that any alleged invalid lease could subsequently be set aside by the court providing *863 full remedy to Petitioners." (Final Order, para. 5).
Belatedly realizing that there was indeed a Sunshine Law problem here, the County attempted to cure the Sunshine Law violation. The trial court summarized the County's actions, and drew its conclusions of law, as follows:
7. On July 29 the County attempted to rectify the open meeting violations of its advisory panel at the meeting scheduled to approve the panel's negotiated lease. Prior to discussion of the negotiated lease the County Attorney caused to be read into the record two documents prepared by the County Administrator purporting to reflect the minutes of the Advisory Board's meetings on January 27 and March 12... . The first document was in the form of a 4 page letter written by the County Administrator to Joe Hammond, President of the Pigeon Key Foundation dated January 28 in which he summarized the committee's negotiations of the previous day. The second document read was a 4 page "Memorandum" prepared by the County Administrator directed to Hammond summarizing the 3 hour meeting of the Advisory Committee held with the "Foundation" on March 12, 1993.
8. After a reading of these letters the meeting of July 29 was opened for discussion concerning approval of the proposed 30 year lease. Approximately 20 individuals addressed the County Commission. Thereafter the lease was approved essentially as negotiated with only minor changes made to certain language of the Whereas clauses, and by adding an additional clause to prohibit the Foundation from allowing the collecting of marine resources within one half mile of the island and adding a hold harmless clause if for any reason the subject lease was declared invalid.
9. That both parties stipulate that the meetings of January 27, 1993 and March 12, 1993 were held in violation of F.S. 286.011. The issue before the court is therefore limited to whether or not the violations have none-the-less been rendered cured in accord with Tolar [v. School Board of Liberty County, 398 So.2d 427 (Fla. 1981)].
10. This court does not read Tolar as offering local governments a panacea for all [open] meeting law violations in all instances irrespective of the number of Sunshine violations uncovered, the number of citizens concerned, affected or interested in the outcome, the length, nature and kind of the particular violations, the overall importance and long range effect of the action taken by the governmental body in comparison to the curative action taken.
11. In the instant case the action of the County Board ... involved the granting of a thirty (30) year exclusive lease for the use of Pigeon Key, an island owned by the County located south of Marathon situated approximately midway the famous Seven Mile Bridge. The island is accessible by vehicle via the old Seven Mile Bridge and contains numerous historical residential structures used in the past in operation of the East Coast Railroad system.
12. The subject lease called for the renovations of all the numerous historical structures on the island and require[d] the lessee to implement its Island Master Plan and as such said lease and the negotiations surrounding same constitute discussion of vital issues of great public importance.
13. In no reported cases cited by the Respondent Monroe County have open meeting violations of the magnitude shown here been deemed cured by the procedures employed here. Tolar involved the decision of the school board to abolish the position of school administrator after members of the school board had met informally with the school superintendent-elect and discussed same. In Tolar a regular advertised open [meeting] with Tolar present and given a full opportunity to express his views concerning the abolition of his position was deemed sufficient when afterwards the Board duly voted by voice vote to abolish the position.
14. Similarly, in Bassett v. Braddock, 262 So.2d 425 (Fla. 1972), an open meeting violation of using a secret ballot to elect a chairman or presiding officer was deemed *864 cured by a subsequent voice vote confirming the selection.
15. Abolishing an administrative position or selecting a presiding officer are government actions that have little [effect], if any, on the public and normally receive little, if any, public input.
16. More appropriate to the decision in the case are the facts of the 1974 Supreme Court of Florida opinion Town of Palm Beach v. Gradison, 296 So.2d 473 [(Fla. 1974)], wherein it was held that a planning committee appointed by the town council was subject to the open meeting law. Here no curative steps had been taken. The planning committee met numerous times discussing a comprehensive zoning plan for the city in contravention of the statute. Later the plan prepared by the committee after a full and complete hearing was approved in essentially the same form by the town council as was recommended by the committee. The zoning plan was invalidated. Gradison turned on whether or not the provisions of the open meeting law applied to the advisory panel. However it's doubtful that a reading of a summary of the advisory panel's meeting's minutes prepared by an attending member would have cured the violations due to the seriousness of the violation and the long term [effect] upon the public.
17. The letters of the County Administrator were an inadequate substitute for notice to the public of the time and place of the subject meetings and opportunity to be present and attend discussions and negotiations concerning a proposed 30 year lease. The meeting of the Advisory Board on March 12 was 3 hours in duration yet the Memorandum condensed the meeting into a little more than 3 pages. The duration of the January 27 meeting is unknown but resulted in a 4 page summary.
18. The fact that a public meeting was held by the commission on June 15 and again on July 29 before adoption of the lease does not cleanse the [open] meeting law violations under the circumstances as described in the evidence presented to the court in this case.
IT IS THEREFORE ORDERED and ADJUDGED:
1. That there was a violation of the Florida Open Meeting law, Florida Statute 286.011 on January 27, 1993 and on March 12, 1993.
2. That the violations have not been shown cured in accord with applicable law.
3. The lease approved between the Board of County Commissioners of Monroe County, Florida and the Pigeon Key Foundation is hereby declared non-binding in accord with F.S. 286.011(1) and null and void.
4. The Respondents are at liberty to renegotiate the lease in accordance with the law.
5. The court reserves jurisdiction regarding attorneys fees and costs pursuant to F.S. 286.011.
(Emphasis added).
In the first place, Judge Payne entered his thorough order after an evidentiary hearing. The factual findings are supported by substantial competent evidence. Unless the court has misapprehended the law  and the court did not  we are obliged to affirm.

III
By ruling as it has, the majority has misapprehended the thrust of Tolar v. School Board of Liberty County, Town of Palm Beach v. Gradison, and Spillis Candela & Partners, Inc. v. Centrust Savings Bank, 535 So.2d 694 (Fla. 3d DCA 1988), among others.
For present purposes the open meetings cases must be divided into two groups. One group is represented by Tolar, in which a collegial body commits an open meetings violation, and then the same collegial body holds another open meeting in order to correct its own violation.
In Tolar the superintendent-elect of schools met privately with "some or all of the School Board members to discuss ideas on reorganization. Included in these discussions was the topic of removal of Tolar and the abolition of his position." 398 So.2d at 427. This was concededly a sunshine violation. Id. at 428. Thereafter, the School Board held a public meeting at which the *865 Board discussed the abolition of Tolar's position and then by public vote, abolished it. Id. at 428.
The Florida Supreme Court held that the procedure followed in the Tolar case was sufficient to cure the open meetings violation. This may be looked at as a matter of fashioning an effective remedy. If the supreme court in Tolar had ruled the other way, the remedy would have been to set aside the action abolishing Tolar's position, and to order the Liberty County School Board to schedule another public meeting on the subject of the abolition of Tolar's position. It is reasonably clear that the supreme court majority rejected this approach because the Liberty County School Board had already had such a meeting. In that context, the public meeting was deemed to cure the open meetings violation.
To the same effect is Bassett v. Braddock, 262 So.2d 425 (Fla. 1972). In that case the election of the chairperson and vice-chairperson of the Dade County School Board was initially conducted by secret ballot, but this was later followed by a motion and vote in open meeting. Based on the "particular circumstances" presented, "any initial violation by secret written ballot was cured and rendered `sunshine bright' by the corrective open, public vote which followed." Id. at 428-29. Again, the practical consideration underpinning this decision is that if the supreme court had invalidated the election of school board officers, the remedy would simply be to return to the school board with directions to conduct a public vote  but the school board had already conducted a public vote.
In a different category are the "advisory board" cases: cases in which an advisory board commits an open meetings violation, and the question is whether subsequent action by a different body  typically the city council or county commission  will cure the open meetings violation. The most frequently cited example is Town of Palm Beach v. Gradison, 296 So.2d 473 (Fla. 1974). There, the Town Council appointed a planning advisory committee to propose new zoning ordinances. The planning advisory committee conducted secret meetings. Id. at 475. The advisory body submitted its proposed plan, which was then subject to public hearings by the zoning commission and the Town Council. The committee's proposal was then adopted. The Florida Supreme Court invalidated the zoning ordinance "because of the non-public activities of the citizens planning committee which ... participated in the formulation of the zoning plan." Id. at 478. The court made clear that the Sunshine Law includes "the collective inquiry and discussion stages within the terms of the statute[.]" Id. at 477. "Mere showing that the government in the sunshine law has been violated constitutes an irreparable public injury[.]" Id.
In Bigelow v. Howze, 291 So.2d 645 (Fla. 2d DCA 1974), the county commission appointed a committee to study a proposed county contract. This required an out-of-state fact-finding trip. While on the trip, the committee members met and discussed their recommendation at a meeting which was not in conformity with the Open Meetings Law. The Second District concluded:
Upon its return to Florida, the committee should have held a public meeting with proper advance notice at which time the reasons to recommend Hunnicutt would have been aired and the committee's decision would have been made.
... .
We cannot say that the trial court erred in finding that the ratification of the award by the full Commission failed to breathe life into the contract which was tainted by the Sunshine Law violation.
Id. at 647-48.
In Blackford v. School Board of Orange County, 375 So.2d 578 (Fla. 5th DCA 1979), the school superintendent held a series of private meetings with what amounted to sub-committees of the school board to discuss possible redistricting alternatives. This "resulted in six de facto meetings by two or more members of the board at which official action was taken. As a consequence, the discussions were in contravention of the Sunshine Law." Id. at 580. Following the private meetings, there was a public meeting of the school board, which took final action.
*866 The court set aside the school board's vote and directed that the entire process be reopened. In so doing, the court said, "we recognize the possibility that the board, upon reconsideration, may decide on the same course of action as before. However, what we do require is that the entire redistricting problem, and all the supporting data and input leading up to the resolutions which are the subject matter of this cause, be re-examined and re-discussed in open public meetings." Id. at 581.
In Spillis Candela & Partners, Inc. v. Centrust Savings Bank, 535 So.2d 694 (Fla. 3d DCA 1988), the Dade County Board of Rules and Appeals created a committee to report on the correctness of certain plans for the Centrust parking garage. The committee was covered by the Sunshine Law, but deliberated in secret. The committee presented its report to the full Board, which then "ratified the committee's report without a full and open public hearing on the matter." Id. at 695. This court ruled that the ratification of the committee report in public session was insufficient to correct the Sunshine Law problem. "Only a full, open public hearing by the Board could have cured any problem." Id. (citation omitted).
From the foregoing decisions, the following principles can be gleaned. By statute, action taken in violation of the Open Meetings Law is to be set aside. See § 286.011(1), Fla. Stat. (1993); Town of Palm Beach v. Gradison, 296 So.2d at 476. Where that occurs, the public agency may restart the deliberative process, but only in full compliance with the Sunshine Law.
Under the Sunshine Law and the new constitutional amendment, the right being protected is the right of the public to notice and an opportunity to be heard where public agencies  including the advisory committee at issue here  meet in furtherance of public business. Where there are secret meetings, or meetings without the required notice, the problem can be cured only by scheduling a new meeting of an appropriate deliberative body which will cover the same subject matter previously covered in violation of the Sunshine Law. In order to obtain relief under the Sunshine Law, the citizen does not need to show that the outcome would have been different had there been compliance with the Sunshine Law; it will almost always be impossible to demonstrate how things might have been different if the Open Meetings Law had been followed. This reasoning is akin to that which in civil litigation invariably allows a litigant a new hearing if the litigant was not given required notice and an opportunity to be heard. See, e.g., Fernandez v. Colson, 472 So.2d 868 (Fla. 3d DCA 1985) (where moving party was obliged to give notice of application for default and failed to do so, the default will be vacated for want of notice, without the necessity of showing, inter alia, a meritorious defense); accord Herrera v. Garcia, 559 So.2d 83 n. 1 (Fla. 3d DCA 1990); Reicheinbach v. Southeast Bank, N.A., 462 So.2d 611, 612 (Fla. 3d DCA 1985); Chester, Blackburn & Roder, Inc. v. Marchese, 383 So.2d 734, 735 n. 3 (Fla. 3d DCA 1980).
If the public agency has taken the necessary corrective action on its own volition, then in appropriate cases the agency is found to have cured the Sunshine Law problem. In Tolar the school board had had a secret meeting to discuss Tolar's contract. It later had a full meeting on proper notice to discuss the same issue. In those narrow circumstances, the public meeting was found to have cured the Sunshine Law violation.
By contrast, where the violation occurred before an advisory committee, Town of Palm Beach v. Gradison held that later public deliberations by the Town Council did not cure the problem. That is so because the advisory group's deliberative process was not "restarted" or done over in front of the Town Council. Instead, the Town Council picked up the work product of the advisory committee and used it as a basis for the Town Council's deliberations. This action was ineffective to cure the Sunshine Law problem.
Less than two years ago, the voters of Florida elevated the right to open meetings to the status of one of our fundamental rights set forth in the Declaration of Rights of the Florida Constitution. Tolar and Town of Palm Beach v. Gradison were decided purely as matters of statutory construction of the Open Meetings Law. Given the new constitutional *867 amendment, it is abundantly clear that hereafter, all doubts must be resolved in favor of the right of the public to have fully protected access to open meetings. The new constitutional amendment is expressly declared to be self-executing, and the judiciary is obliged to give proper enforcement to the new constitutional right.

IV
In light of the foregoing principles, it is clear that the trial court was completely correct in setting aside the action of the Monroe County Commission. The County argues that the Sunshine Law violation was cured because on July 29 the County Attorney read into the record summaries of the events transpiring at the Advisory Board's meetings on January 27 and March 12.
In no way could the reading of summaries of the violative Advisory Board meetings correct the Sunshine Law infraction. The entire point of the Sunshine Law is to give proper notice of public meetings so that citizens have an opportunity to attend and participate. All the County Attorney did in this instance was to give a summary of events occurring at meetings which had not been properly noticed. This misses the point. Under the County's theory, it is acceptable to have private meetings, or unnoticed meetings, so long as the public is later given a summary of events. That approach misapprehends the purpose of the Sunshine Law. Meaningful notice and an opportunity to participate is required so that citizens have a statutorily and constitutionally protected right to be able to attend and participate if they choose. An after-the-fact reading of a summary of an unnoticed meeting is in no way a cure of a Sunshine Law violation.
The County argues that because there were public County Commission hearings on June 15 and July 29, this means that there was a full and appropriate opportunity for public participation, and that this opportunity functioned as a cure for the prior Sunshine Law violation. Again, this argument misses the point of Town of Palm Beach v. Gradison, and misses the distinction between Gradison and Tolar. The trial court in this case found that the County Commission had instructed the Pigeon Key Advisory Board to negotiate a thirty year lease on Pigeon Key. The Advisory Board's work product  a proposed lease  was submitted to the County Commission. On June 15, the County Commission referred the lease to the county staff for certain modifications having nothing to do with the Sunshine Law violations. On July 29, the lease was approved as modified. This process is exactly parallel to that which occurred in Gradison. There, the work product of the advisory body was the subject of public hearings before the Town Council. The supreme court concluded that the later public deliberations by the Town Council did not cure the earlier advisory body violations, because the hearings before the Town Council did not "restart" or "do over" the work done before the advisory body. In Tolar, by contrast, it was the school board itself which committed the violation; the school board itself then had a later, duly announced public meeting to discuss the identical subject matter which had been discussed in private.
The majority relies on Spillis Candela & Partners, Inc. v. Centrust Savings Bank, but that reliance is misplaced. In Spillis Candela, the report of the committee was submitted to the Dade County Board of Rules and Appeals, which approved it. 535 So.2d at 695. The ratification in public session was held not to cure the Sunshine Law problem. Id. at 695. The court said, "Only a full, open public hearing by the Board could have cured any problem." Id. (citing Tolar). What this means is that the entire subject matter of the committee's secret deliberations would have had to be fully aired in a properly noticed public session in order to cure the problem. Interpreting Spillis Candela in any other way would create a conflict with Town of Palm Beach v. Gradison.
The County also strongly suggests that it will be a waste of time to sustain the trial court's ruling because the County Commission has voted and further deliberations will not change anything. As already suggested, that argument likewise misses the point. The integrity of public decision-making can be assured only when the Sunshine Law is respected. All citizens are entitled to enforce the Sunshine Law. The citizen's right *868 to open government, like a litigant's right to due process, notice, and an opportunity to be heard, does not depend on a showing of likelihood that the ultimate outcome will be different.

V
It is the judiciary's mandate under the new constitutional amendment to enforce the public right to open meetings. The trial court correctly analyzed the decisional law. The trial court conducted an evidentiary hearing and concluded as a factual matter that the July 29 meeting did not cure the earlier admitted Sunshine Law violations. The trial court's order should be affirmed.[2]

ON MOTION FOR REHEARING AND CERTIFICATION
GERSTEN, Judge.
Appellee moves for rehearing and certification of our opinion filed July 12, 1994. We deny the motions.
On appeal, this court reversed the trial court's invalidation of a final governmental action taken by the Monroe County Board of County Commissioners (the Commission). The Commission approved a lease with the Pigeon Key Preservation Foundation (the Foundation) following two meetings of the Pigeon Key Advisory Committee (the Committee) which were held without public notice. Following these meetings which violated the Sunshine Law, 1) the Committee held a public meeting, 2) the Commission thereafter conducted two public hearings, and 3) the County attorney, the Foundation's attorney and Commission members made substantial revisions to the lease. In fact, the Commission excised from the lease the Committee's principal recommendation that Pigeon Key be made an ongoing tourism attraction. We held, therefore, that the Committee's Sunshine Law violations were cleansed by the final actions of the Commission.
As we previously determined, Tolar v. School Bd. of Liberty County, 398 So.2d 427 (Fla. 1981), governs this case. Tolar established the legal standard for resolving whether a Sunshine Law violation has been cured. Tolar requires final, independent action in the sunshine that is not a ceremonial acceptance or perfunctory ratification of secret decisions. Id. at 429.
We still do not find the appellee's arguments sufficiently persuasive to discard the binding precedent of Tolar. First, the new Constitutional amendment does not create a new legal standard by which to judge Sunshine Law cases. In fact, although the amendment has elevated Sunshine Law protection to constitutional proportions, the language of Article I, Section 24(b), of the Florida Constitution, is virtually identical to that of the Sunshine Law statute, section 286.011(1), Florida Statutes (1993). Therefore, we find no reason to construe the amendment differently than the Supreme Court has construed the statute. Indeed, had the drafters of the amendment sought to overrule Tolar, they would have done so.
Second, the Sunshine Law does not require unique treatment for governmental advisory committees. Where an advisory committee has committed a Sunshine Law violation, the committee itself need not reconvene in public to discuss the subject matter considered in private. Only a full, open public hearing by the public agency can correct the committee's Sunshine Law violations. Spillis Candela & Partners, Inc. v. Centrust Sav. Bank, 535 So.2d 694 (Fla. 3d DCA 1988). Here, the Commission held two public hearings to address the subject matter previously considered by the Committee.
Third, the Sunshine Law does not provide that cases be treated differently based upon their level of public importance. Tolar's standard of remediation by independent final action in the sunshine applies regardless of whether a case concerns a City Council's approval of an $8.8 million dollar utility system improvement. Yarbrough v. Young, 462 So.2d 515 (Fla. 1st DCA 1985), or a School Board's abolition of an administrator's position, Tolar, 398 So.2d at 427.
*869 In conclusion, the Sunshine Law equally binds all members of governmental bodies, be they advisory committee members or elected officials. Art. I, § 24(b), Fla. Const.; § 286.011(1), Fla. Stat. (1993). Governmental officers who meet in secret may be penalized. § 286.011(1), Fla. Stat. (1993). Governmental bodies who hold unnoticed meetings do so at their peril. Their final public action may be invalidated, if the action does not meet the standard of Tolar v. School Bd. of Liberty County, 398 So.2d 427 (Fla. 1981). Here, we deny the motions for rehearing and certification because the Monroe County Board of County Commissioners met the Tolar standard.
Motions for rehearing and certification denied.
NESBITT, J., concurs.
COPE, Judge (dissenting).
For the reasons stated in my previously filed dissent to the panel opinion, I would grant rehearing and alternatively, the motion for certification.
NOTES
[1] Although I support an unadulterated Sunshine Law, my viewpoint is irrelevant when it conflicts with the Florida Supreme Court. A judge's role in an intermediate appellate court is to follow the law, not impose one's personal opinions to change it. Following the law brings stability to our legal system and security to the public who rely on the law for certainty. In that light, imperfect law is better than inconstant law.
[1] The amendment was favored by 83 percent of those voting. Patricia A. Gleason & Joslyn Wilson, The Florida Constitution's Open Government Amendments: Article I, Section 24 and Article III, Section 4(e)  Let the Sunshine Inl, 18 Nova Law R. 973, 979 n. 32 (1994).
[2] As a procedural matter, the County complains that the pleading in this case was entitled "Petition" instead of "Complaint." The pleading satisfied the requisites for a complaint and the trial court was within its discretion to treat it as such.