Mr. Sanford A. Minkoff Lake County Attorney Post Office Box 7800 Tavares, Florida 32778
Dear Mr. Minkoff:
You ask substantially the following question:
If the Lake County Board of County Commissioners dissolves its Cultural Affairs Council and designates a nonprofit organization as the local arts agency for the county and the recipient of the specialty license plate revenue, is such nonprofit organization subject to the Government in the Sunshine Law?
In sum:
If the Lake County Board of County Commissioners dissolves its Cultural Affairs Council and designates a nonprofit organization to fulfill that role for the county, such a nonprofit organization would be subject to the Government in the Sunshine Law.
You state that the Lake County Board of County Commissioners has established a Cultural Affairs Council pursuant to section 265.32, Florida Statutes.[1] The Council currently receives a majority of its funding from the specialty Florida Arts license plate revenues under section 320.08058(12), Florida Statutes. That statute provides for the distribution of the Florida Arts license plates' annual use fees in the amount of such fees collected in each county to the county arts council for such county or, if there is none, to such other agency in the county as the Division of Cultural Affairs of the Department of State designates.
According to your letter, however, the county agreed to promote the development of a new arts organization, to be incorporated as a 501(c)(3) corporation. The new nonprofit organization, known as the Arts Association of Lake County (Association), recently began operating in the county with two members of the Council serving on the Association's board, one as a liaison and the other as a volunteer board member. Discussions have been held regarding the feasibility of disbanding the Council and designating the Association as the local arts agency to carry out those functions formerly performed by the Council and to receive the specialty license plate revenue. A question has arisen as to the applicability of the Government in the Sunshine Law. You state that the county is of the opinion that the Association would be subject to the Sunshine Law, and I concur in that conclusion.
Florida's Government in the Sunshine Law, section 286.011, Florida Statutes, provides that "[a]ll meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision . . . at which official acts are to be taken are declared to be public meetings open to the public at all times[.]"[2] The statute has been held applicable to private organizations when the private entity has been created by a public agency, when there has been a delegation of the public agency's governmental functions, or when the private organization plays an integral part in the decision-making process of the public agency.[3] Because much of the litigation involving application of the open government laws to private organizations has been in the area of public records, however, the courts have frequently looked to Chapter 119, Florida Statutes, in determining the applicability of the Sunshine Law.[4]
As the courts have emphasized in analyzing Chapter 119, Florida Statutes, the mere receipt of public funds by a private corporation under contract with governmental entities is not, standing alone, sufficient to bring the organization within the ambit of the open government requirements. Thus, the Supreme Court of Florida, in News and Sun-Sentinel Company v. Schwab, Twitty Hanser Architectural Group, Inc.,[5] set forth various criteria to be considered in determining whether a private entity is subject to the Public Records Law.
Recent decisions by the courts have broadened the test used to determine whether the open government laws apply to a private entity, focusing on whether the private entity is merely providing services to the public agency or is standing in the shoes of the public agency. For example, the court in Stanfield v. SalvationArmy,[6] in holding a private corporation subject to Chapter 119, Florida Statutes, noted that a private corporation taking over the county's role as the provider of probation services "was not the provision of architectural services as in Schwab, but the complete assumption of a governmental obligation. Rather than providing services to the county, the Salvation Army provided services inplace of the county."
The Fifth District Court of Appeal in News-Journal Corporation v.Memorial Hospital-West Volusia, Inc.[7] reviewed the Schwab
factors as they applied to the relationship between a hospital authority and the not-for-profit company leasing the public hospital's facilities. The court recognized a distinction between a contract in which the private entity provides services to a public body and a contract in which the private entity provides services in place of the public entity.
If one merely undertakes to provide material — such as police cars, fire trucks, or computers — or agrees to provide services — such as legal services, accounting services, or other professional services — for the public body to use in performing its obligations, then there is little likelihood that such contractor's business operation or business records will come under the open meetings or public records requirements. On the other hand, if one contracts to relieve a public body from the operation of a public obligation — such as operating a jail or providing fire protection — and uses the same facilities or equipment acquired by public funds previously used by the public body then the privatization of such venture to the extent that it can avoid public scrutiny would appear to be extremely difficult, regardless of the legal skills lawyers applied to the task.[8]
Concluding that the private entity was providing services in place of the public body, the district court held that the not-for-profit company, which was specifically created to contract with a public hospital authority for the operation of the authority hospital established by public funds, was subject to open records and open meeting requirements.[9] The Supreme Court of Florida has accepted review and the case is currently on appeal before that Court.[10] This office, however, has relied on the analysis utilized by the West Volusia court; in Attorney General Opinion 97-49, this office concluded that the not-for- profit foundation operating a municipal hospital was subject to the Sunshine and Public Records Laws.
In the instant inquiry, you state that while the Association was not created by the county, the county played an integral part in the Association's creation. The idea of creating such an Association was derived from discussions of the county Cultural Affairs Council, which believed that the public could more efficiently be served through the Association. While the Association was formed by a group separate from the Council, two members of the Council serve on the Association's board. While the county does not directly contribute funds to the Association, it will seek to have the Association designated as the recipient of the specialty license plate revenues allocated to the county pursuant to section 320.08058(12), Florida Statutes. Thus, from the information provided to this office, it appears that the Association would be assuming the governmental obligation; rather than providing services to the county, the Association would be providing services in place of the Council and would receive the public funding formerly provided to the Council to carry out that purpose.
In light of the above, I am of the opinion that if the Lake County Board of County Commissioners dissolves its Cultural Affairs Council and designates a nonprofit organization to fulfill that role for the county, such a nonprofit organization would be subject to the Government in the Sunshine Law.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 265.32, Fla. Stat., authorizes each county to create a county fine arts council as a public body corporate and politic. The statute provides for the membership and organization of the council and its executive directors and authorizes such councils to issue revenue bonds.
[2] Section 286.011(1), Fla. Stat.
[3] See, e.g., Ops. Att'y Gen. Fla. 92-53 (1992) (direct-support organization created for purpose of assisting public museum subject to s. 286.011, Fla. Stat.); 83-95 (1983) (where county accepted services of nongovernmental committee to recodify and amend county's zoning laws, committee subject to Sunshine Law).
[4] See generally, Marston v. Gainesville Sun PublishingCompany, Inc., 341 So.2d 783 (Fla. 1st DCA 1976), cert. denied,352 So.2d 171 (Fla. 1977); Cape Coral Medical Center, Inc. v.News-Press Publishing Company, Inc., 390 So.2d 1216, 1218 n. 5 (Fla. 2d DCA 1980) (inasmuch as the policies behind Ch. 119 and s.286.011 are similar, they should be read together); Wood v.Marston, 442 So.2d 934, 938 (Fla. 1983); and Krause v. Reno,366 So.2d 1244 (Fla. 3d DCA 1979).
[5] 596 So.2d 1029 (Fla. 1992). The Schwab Court included such factors as: the level of public funding; commingling of funds; whether the activity was conducted on publicly-owned property; whether services contracted for are an integral part of the public agency's chosen decision-making process; whether the private entity is performing a governmental function; the extent of the public agency's involvement with, regulation of, or control over the private entity; whether the private entity was created by the public agency; whether the public agency has a substantial financial interest in the private entity; and for whose benefit the private entity is functioning.
[6] 695 So.2d 501, 503 (Fla. 5th DCA 1997).
[7] 695 So.2d 418 (Fla. 5th DCA 1997). In applying the Schwab
factors, the court found that while the hospital authority did not actually create the not-for-profit corporation, it played a role in its formation since it required its formation in order to transact the lease. While it was contended that the authority provided little or no financial investment in the venture, the court found that the lease of the hospital property which had been acquired with public funds constituted a substantial level of public funding and created a substantial financial interest in the venture for the hospital authority. The court further determined that the activities took place on publicly owned property and the private corporation performed a service that would otherwise be provided by the hospital authority and thus functioned for the benefit of the authority by providing such services. Finally, the court stated that while the hospital authority had no voting member of the corporation's board of directors, it had considerable control by virtue of the requirements of the lease and the performance standards established therein.
[8] Id. at 420.
[9] The West Volusia court also relied on Art. I, s. 24, Fla. Const., which provides a constitutional right of access to public records and meetings. See, Monroe County v. Pigeon Key HistoricalPark, Inc., 647 So.2d 857 (Fla. 3d DCA 1994) (Art. I, s. 24, Fla. Const., which reaffirmed the Sunshine Law and extended its reach to every meeting of collegial public body at which public business is transacted or discussed would not be construed differently than sunshine law statute; although amendment elevated sunshine law protection to constitutional proportions, its language was virtually identical to that of statute).
[10] See, Memorial Hospital-West Volusia, Inc. v. News-JournalCorporation, 700 So.2d 686 (Fla. 1997) [Case No. 90,835].