Dear Mr. Ardaman:
You ask substantially the following questions:
 1. May a city council member serve as a webmaster (administrator) of a privately-owned and operated internet website which serves as a forum for citizen discussion of local political issues, including issues to be considered by the city council?
 2. If so, then may the city council member/ webmaster contribute to the discussion by outlining the member's positions on city issues?
 3. May another city council member contribute to the website by sending information through the webmaster, as long as neither responds to the other?
 4. May city council members post comments on the website in response to citizens comments or questions relating to city business posted on the website?
 5. If the city council member serves as the webmaster, would materials submitted to the website be subject to the Public Records Law, Chapter 119, Florida Statutes?
 6. Are materials submitted by a city council member to the website considered public records under Chapter 119, Florida Statutes?
 7. If the answers to Questions Five and Six are in the affirmative, what obligations does the webmaster have to preserve such records and make them available for inspection and copying?
 8. What responsibilities would the City of DeBary have in maintaining the records referenced in Questions Five and Six?
Due to the interrelated nature of your questions, they will be answered together.
You state that a newly elected city council member is a webmaster and regular contributor to an internet website which serves as a public forum for citizen discussion and debate on issues likely to come before the city commission for official action. The website is not affiliated with the city. Another recently elected council member is a regular contributor to the website. You indicate that the webmaster's duties include screening submitted materials for vulgarity and offensive comments, then posting the materials on the website. The webmaster uses an e-mail address separate from the one used for official city business. Primarily, the city is unsure of Government in the Sunshine Law implications for postings among city council members on issues upon which foreseeable action will be taken by the city council.
Government in the Sunshine/Public Meetings
Section 286.011, Florida Statutes, has three requirements:
 "(1) meetings of public boards or commissions must be open to the public;
 (2) reasonable notice of such meetings must be given; and
 (3) minutes of the meetings must be taken."
The Government in the Sunshine Law applies to any gathering, whether formal or casual, of two or more members of the same board or commission to discuss some matter on which foreseeable action will be taken by the public board or commission.[1] The law extends to the discussions and deliberations as well as the formal action taken by a public board or commission, with no requirement that a quorum be present for a meeting of members of a public board or commission to be subject to section286.011, Florida Statutes.
While the Sunshine Law generally applies to meetings of "two or more" members of the same board or commission,[2] the Florida Supreme Court has stated that the Sunshine Law is to be construed "so as to frustrate all evasive devices."[3] Thus, the courts and this office have found that there are instances where the physical presence of two or more members is not necessary in order to find the Sunshine Law applicable.
For example, this office has concluded that the use of memoranda among members of a board or commission to avoid a public meeting may be a violation of the Sunshine Law, even though two members of the board or commission are not physically present. In such a situation, if a memorandum reflecting the views of a board member is circulated among the other board members with each indicating his or her approval or disapproval, upon completion of the members signing off, the memorandum has the effect of becoming official action of the board in violation of the Government in the Sunshine Law.[4]
This office, in Attorney General Opinion 07-35, concluded that members of a commission may exchange documents that they wish other members of the commission to consider on matters coming before the commission for official action, provided there is no response from, or interaction related to such documents among, the commissioners prior to the public meeting. It was noted, however, that if the commissioners intended to exchange individual position papers on the same subject, this office would express the same concerns as discussed in Attorney General Opinion 01-21. In that opinion, this office was asked whether the preparation and distribution of individual position statements on the same subject by several city council members to all other council members would constitute an interaction or exchange by the council that would be subject to the requirements of the Government in the Sunshine Law. This office determined that such a practice would violate the Sunshine Law to the extent that any such communication is a response to another council member's statement. In Attorney General Opinion 01-20, it was determined that an e-mail communication of factual background information from one city council member to other council members that does not result in the exchange of council members' comments or responses on subjects requiring council action does not constitute a meeting subject to the Government in the Sunshine Law.[5]
The use of a website blog or message board to solicit comment from other members of the board or commission by their response on matters that would come before the board would trigger the requirements of the Sunshine Law. Such action would amount to a discussion of public business through the use of the electronic format without appropriate notice, public input, or statutorily required recording of the minutes of the meeting. While as noted above, the mere posting of a position does not implicate the Sunshine Law, it would appear that any subsequent postings by other commission members on the subject of the initial posting could be construed as a response which would be subject to the statute.
While there is no statutory prohibition against a city council member posting comments on a privately maintained electronic bulletin board or blog, nor is there any statutory proscription against a city council member serving as the webmaster of such a site, members of the board or commission must not engage in an exchange or discussion of matters that foreseeably will come before the board or commission for official action. The use of such an electronic means of posting one's comments and the inherent availability of other participants or contributors to act as liaisons would create an environment that could easily become a forum for members of a board or commission to discuss official issues which should most appropriately be conducted at a public meeting in compliance with the Government in the Sunshine Law. It would be incumbent upon the commission members to avoid any action that could be construed as an attempt to evade the requirements of the law.
Public Records
It is the policy of this state that all state, county, and municipal records are open for personal inspection and copying by any person.[6]
Section 119.011(11), Florida Statutes, defines "[p]ublic records" as "all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or inconnection with the transaction of official business by anyagency." (e.s.)
"Agency" includes "any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law . . . and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency."[7]
Thus, a city council member clearly is subject to the provisions of Chapter 119, Florida Statutes, when making or receiving public records in carrying out official business. This office has stated that e-mail messages made or received by agency employees or officials in connection with official business are public records and are subject to disclosure in the absence of an exemption.[8] It is the nature of the record created rather than the means by which it is created which determines whether it is a public record. Thus, an email created by a public official in connection with the transaction of official business is a public record whether it is created on a publicly or privately owned computer. To the extent that the council member is publicly posting comments relating to city business, this office cannot conclude that such postings are not made in connection with the transaction of official business. Accordingly, I am of the opinion that such postings would be subject to the requirements of the Public Records Law.
When considered with the discussion above, it would appear that the postings and emails of a city council member relating to his public duties would be public records subject to the provisions of Chapter 119, Florida Statutes.
Chapter 119, Florida Statutes, imposes various duties upon the custodian of a public record. For example, section 119.07(1), Florida Statutes, provides:
 "(1)(a) Every person who has custody of a public record shall permit the record to be inspected and copied by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public records.
 (b) A custodian of public records or a person having custody of public records may designate another officer or employee of the agency to permit the inspection and copying of public records, but must disclose the identity of the designee to the person requesting to inspect or copy public records.
 (c) A custodian of public records and his or her designee must acknowledge requests to inspect or copy records promptly and respond to such requests in good faith. A good faith response includes making reasonable efforts to determine from other officers or employees within the agency whether such a record exists and, if so, the location at which the record can be accessed.
 (d) A person who has custody of a public record who asserts that an exemption applies to a part of such record shall redact that portion of the record to which an exemption has been asserted and validly applies, and such person shall produce the remainder of such record for inspection and copying.
 (e) If the person who has custody of a public record contends that all or part of the record is exempt from inspection and copying, he or she shall state the basis of the exemption that he or she contends is applicable to the record, including the statutory citation to an exemption created or afforded by statute.
 (f) If requested by the person seeking to inspect or copy the record, the custodian of public records shall state in writing and with particularity the reasons for the conclusion that the record is exempt or confidential.
 * * *
 (h) Even if an assertion is made by the custodian of public records that a requested record is not a public record subject to public inspection or copying under this subsection, the requested record shall, nevertheless, not be disposed of for a period of 30 days after the date on which a written request to inspect or copy the record was served on or otherwise made to the custodian of public records by the person seeking access to the record. If a civil action is instituted within the 30-day period to enforce the provisions of this section with respect to the requested record, the custodian of public records may not dispose of the record except by order of a court of competent jurisdiction after notice to all affected parties.
 (i) The absence of a civil action instituted for the purpose stated in paragraph (g) does not relieve the custodian of public records of the duty to maintain the record as a public record if the record is in fact a public record subject to public inspection and copying under this subsection and does not otherwise excuse or exonerate the custodian of public records from any unauthorized or unlawful disposition of such record." (e.s.)[9]
Thus, Chapter 119, Florida Statutes, dictates the responsibilities of the custodian of public records. "Custodian of public records" is defined as "the elected or appointed state, county, or municipal officer charged with the responsibility of maintaining the office having public records, or his or her designee."[10]
In Puls v. City of Port St. Lucie,[11] the Fourth District Court of Appeal considered who was responsible for responding to a public records request. The court concluded that regardless of whether or not the designated custodian was served with a records request, section119.07(1)(a), Florida Statutes, imposes a duty of disclosure upon "every person who has custody of a public record." The court subsequently clarified who is considered to have custody of a public record inMintus v. City of West Palm Beach,[12] finding that in order to have custody of a public record, one must have supervision and control over the document or have legal responsibility for its care, keeping, or guardianship.
Thus, the records custodian is the person designated by the agency head to perform the responsibilities imposed by Chapter 119, Florida Statutes, as well as any other person who has legal control over the records as discussed in Mintus.
In the instant situation, the public official with control over the records is the city council member who creates and posts the comments on the website. Since the records are public records as they are related to the transaction of city business, such records would appear to be subject to the city's policies and retention schedule regarding city records. While the webmaster administering the website is a city council member, you have stated that the city has no ownership, control, or affiliation with the website. Thus, it would appear that the individual council members who create the public documents through the posted comments and emails would be responsible for ensuring that the
information is maintained in accordance with the Public Records Law and the policies and retention schedule adopted by the city.
Sincerely,
 Bill McCollum Attorney General
BM/tals
[1] Hough v. Stembridge, 278 So. 2d 288 (Fla. 3d DCA 1973). And seeCity of Miami Beach v. Berns, 245 So. 2d 38 (Fla. 1971); Board of PublicInstruction of Broward County v. Doran, 224 So. 2d 693 (Fla. 1969); andWolfson v. State, 344 So. 2d 611 (Fla. 2d DCA 1977).
[2] Hough v. Stembridge, supra. And see City of Sunrise v. News andSun-Sentinel Company, 542 So. 2d 1354 (Fla. 4th DCA 1989); DeerfieldBeach Publishing, Inc. v. Robb, 530 So. 2d 510 (Fla. 4th DCA 1988) (requisite to application of the Sunshine Law is a meeting between two or more public officials); and Mitchell v. School Board of LeonCounty, 335 So. 2d 354 (Fla. 1st DCA 1976).
[3] See, e.g., Town of Palm Beach v. Gradison, 296 So. 2d 473, 477
(Fla. 1974); Blackford v. School Board of Orange County, 375 So. 2d 578
(Fla. 5th DCA 1979).
[4] See Inf. Op. to The Honorable John Blair, May 29, 1973. Andsee Ops. Att'y Gen. Fla. 90-03 (1990) (proposed contract may not be circulated among board members for comments to be provided to other members, as this would be communication among the members on an issue upon which the board will take official action subject to the Sunshine Law) and 93-90 (1993) (board responsible for assessing the performance of its chief executive officer should conduct the review and appraisal process in a proceeding open to the public, instead of using a review procedure in which individual board members evaluate the CEO's performance and send their individual written comments to the board chairman for compilation and subsequent discussion with the chief executive officer).
[5] See also Ops. Att'y Gen. Fla. 96-35 (1996) (written memorandum sent by one school board member to other school board members informing them that the individual member intended to recommend certain action at a school board meeting did not violate the Sunshine Law, where no response from other board members was solicited and no discussion among the members concerning the memorandum occurred prior to the school board meeting), 02-32 (2002), 01-66 (2001), and Inf. Ops. to The Honorable Jack Tanner, Chair, Lee Soil and Water Conservation District, dated March 19, 2007, and Mr. Michael Ciocchetti, Attorney for the Town of Ponce Inlet, dated March 23, 2006.
[6] Section 119.01(1), Fla. Stat. See also Art. I, s. 24(a), Fla. Const., representing this state's constitutional pronouncement regarding access to public records, providing:
 "Every person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf, except with respect to records exempted pursuant to this section or specifically made confidential by this Constitution. This section specifically includes the legislative, executive, and judicial branches of government and each agency or department created thereunder; counties, municipalities, and districts; and each constitutional officer, board, and commission, or entity created pursuant to law or this Constitution."
[7] Section 119.011(2), Fla. Stat.
[8] See, e.g., Ops. Att'y Gen. Fla. 01-20 (2001) and 96-34 (1996).And see In re Amendments to Rule of Judicial Administration 2.051— Public Access to Judicial Records, 651 So. 2d 1185, 1187 (Fla. 1995), in which the Florida Supreme Court noted:
 "The fact that information made or received in connection with the official business of the judicial branch can be made or received electronically does not change the constitutional and rule-mandated obligation of judicial officials and employees to direct and channel such official business information so that it can be properly recorded as a public record. The obligation is the same whether the information is sent as a letter or memo by hard copy or as an e-mail transmission. Official business e-mail transmissions must be treated just like any other type of official communication received and filed by the judicial branch."
[9] Other provisions of section 119.07, Fla. Stat., impose duties relating to public records on the custodian of public records. See,e.g., s. 119.07(2), Fla. Stat. (permitting remote electronic access to public records); s. 119.07(3), Fla. Stat. (permitting photographing of public records); s. 119.07(4), Fla. Stat. (fees for copying or inspection of public records). And see s. 119.021(4), Fla. Stat., providing:
 "(4)(a) Whoever has custody of any public records shall deliver, at the expiration of his or her term of office, to his or her successor or, if there be none, to the records and information management program of the Division of Library and Information Services of the Department of State, all public records kept or received by him or her in the transaction of official business.
 (b) Whoever is entitled to custody of public records shall demand them from any person having illegal possession of them, who must forthwith deliver the same to him or her. Any person unlawfully possessing public records must within 10 days deliver such records to the lawful custodian of public records unless just cause exists for failing to deliver such records."
[10] Section 119.011(5), Fla. Stat.
[11] 678 So. 2d 514 (Fla. 4th DCA 1996).
[12] 711 So. 2d 1359, 1361 (Fla. 4th DCA 1998).