415 So.2d 735 (1982)
B.M.Z. CORPORATION, Appellant,
v.
CITY OF OAKLAND PARK, Appellee.
No. 81-1774.
District Court of Appeal of Florida, Fourth District.
May 5, 1982.
Rehearings Denied June 25, 1982.
*736 Marion E. Sibley of Sibley, Giblin, Levenson & Glaser, Miami Beach, and Zamer & Holmes, Fort Lauderdale, for appellant.
Lewis D. Haines, II, City Atty., and Gordon G. Cooper, Asst. City Atty., Oakland Park, for appellee.
GLICKSTEIN, Judge.
This is the second time we have been asked by appellant, the owner of a nightclub located within the City of Oakland Park, to review a non-final order in its action against the City.[1]
Appellant presently contends the trial court erred in dissolving the injunction it had previously entered upon our mandate in the earlier appeal. It argues the injunction should not have been dissolved because Ordinance 0-79-29, which rolled back the closing hours of nightclubs and showclubs from 4 a.m. to 2 a.m. six days of the week and from 4:00 a.m. to 3 a.m. on Sundays, was invalid for two additional reasons not discussed in our earlier decision; namely, (1) that an illegal effective date was included in the ordinance, and (2) that its enactment was the result of a violation of section 286.011, Florida Statutes (1979), the so-called "Sunshine Law."[2]
In support of its first argument, appellant refers us to article II, section 19 of the City of Oakland Park's Charter, which states that "all ordinances shall become effective immediately upon signature by the Mayor." The title of Ordinance 0-79-29, however, provides for "an effective date of October 1, 1980."[3] Appellant argues that when the ordinance was read for the third time by the City Council and approved by the mayor on November 7, 1979, the law should have taken effect. The ordinance's predetermined effective date, however, invalidated the entire enactment.
We disagree with appellant's conclusion. First, authority supports the proposition that invalidity of the effective date of an ordinance does not render the ordinance void.[4] Second, disregarding the foregoing *737 authority, there is reason to conclude, as we do, that the effective date in the ordinance was valid. Section 166.041(4), Florida Statutes (1979), provides that all ordinances "shall become effective 10 days after passage or as otherwise provided therein" (emphasis supplied). Section 166.041(6) then states in part:
The procedure as set forth herein shall constitute a uniform method for the adoption and enactment of municipal ordinances and resolutions and shall be taken as cumulative to other methods now provided by law for adoption and enactment of municipal ordinances and resolutions.
The key word to us in section (6) is "cumulative," which means "additional."[5] By selecting this word, the legislature apparently intended to give the City freedom to choose which procedure it wanted to use in selecting the effective date of its ordinances, either that set forth in its charter or that authorized by section 166.041(4). The parties to the present case agree the phrase "now provided by law" includes city charters.[6]
Turning to appellant's second point, section 286.011(1), Florida Statutes (1979), provides:
All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting.
Appellant's amendment to its complaint alleged that in an action brought by another establishment for relief from a roll-back ordinance, the Mayor of Oakland Park testified in his deposition as follows:
Q. Did there ever come a time when, concerning the licensed establishments now, that you discussed this matter with other members of the Council other than your regular sessions or meetings?
A. Oh, yes. It was the talk of the town for what, a year, two years. Every-where we met with each other, on the job or anything else, we talked about it.
Q. I'm talking about other members of the City Council.
A. I talked to them individually from time to time on many things, sure. I discussed it with them.
Q. Several times over a period of a year or a year and a half?
A. It was the talk of the town for a long time.
This deposition, appellant argues, shows city officials met in secret to discuss the ordinances before they conducted public hearings on the topic of the roll-back.
The problem with appellant's position is that there is no mention whatsoever of any other testimony by the mayor or other councilmen which would close the gaping holes in the few questions that were asked. We are at a loss to see how the trial court could have determined with whom specifically the conversations took place, or when and where they were held, or what was said by whom-to whom-and in whose presence, or what was done at or as a result of those conversations. The contrast between the facts presented by appellant to the trial court in the present case and the facts presented to the court in Town of Palm *738 Beach v. Gradison, 296 So.2d 473 (Fla. 1974), upon which appellant relies, is the same as between black and white. In Gradison a citizen's advisory committee established by the town council had held numerous private meetings with planners to develop an updated zoning scheme for the town. Upon presentation of the plan to the town council, public meetings and hearings were conducted. The comprehensive plan was then approved in substantially the same form as that which had been submitted.[7]
In the present case there was no evidence before the trial court of any decision having been reached in private so that the subsequent formal action was merely a "perfunctory ratification of secret decisions," Tolar v. School Board of Liberty County, 398 So.2d 427, 429 (Fla. 1981), or a "ceremonial acceptance of secret actions." Id. at 429. In fact, the appendices show the ordinances were considered at three, separate public meetings. At the October 3, 1979, meeting appellant's counsel even participated in the discussion concerning Ordinance 0-79-29; for example, when he asked if the City was still planning to hold a referendum on the subject, he was told "yes." Four other persons also spoke. At the October 17, 1979, meeting comments were invited when Ordinance 0-79-29 was to be considered on second reading. Most important, we know the council submitted the issue of changing the closing hours to the electorate, who made the final decision in favor of a roll-back. This last event should put to rest any question of a Sunshine Law violation.
In sum, it appears appellant has failed to show either a clear legal right to the continuance of the injunction or a substantial likelihood of success on the merits. Accordingly, we affirm the order of the trial court dissolving the temporary injunction.[8]
AFFIRMED.
HURLEY and DELL, JJ., concur.
NOTES
[1] In B.M.Z. Corp. v. City of Oakland Park, 404 So.2d 133 (Fla. 4th DCA 1981), we reversed the trial court's order denying appellant's motion to temporarily enjoin appellee from enforcing roll-back ordinances. We based our decision on the fact that the ordinances were enacted in violation of section 18 of the City of Oakland Park's Charter. Incorporated by reference in appellant's complaint were certified copies of the minutes of the meetings at which these laws were passed. Contrary to the City Charter, the minutes failed to reflect the individual vote of each council member upon the ordinances. Following the issuance of our mandate, the City moved to dissolve the injunction which was entered upon our direction. It then successfully argued to the trial court that on July 1, 1981, it had corrected its minutes of the meetings, nunc pro tunc, pursuant to City of Hallandale v. State ex rel. Sage Corp., 326 So.2d 202 (Fla. 4th DCA 1976), to reflect the individual vote of each member of the council. The City's subsequent action renders the point discussed in our earlier opinion moot.
[2] Appellant, which also argues Ordinance No. 0-79-30 was enacted in violation of the Sunshine Law, first raised this issue by amendment to its complaint filed after our earlier decision.
[3] On November 21, 1979, the City Council adopted Resolution No. R-79-119, submitting the affirmance or repeal of Ordinance No. 0-79-29 to the electorate. As Judge Downey later pointed out in Playpen South, Inc. v. City of Oakland Park, 396 So.2d 830 (Fla. 4th DCA 1981), the electorate overwhelmingly affirmed the ordinance.
[4] 5 Municipal Corporations § 15-39 (McQuillin ed. 1981).
[5] Black's Law Dictionary 343 (5th ed. 1979).
[6] Although we expressly rest our decision on the construction of section 166.041 and although we requested the parties to file additional briefs on questions dealing solely with our review of the order dissolving the temporary injunction, we find it difficult to see the harm occasioned appellant by the delay of the effective date until October 1, 1980, when a new license would become effective for one year. Such delay seems not only consistent with the right of a city pursuant to section 562.14, Florida Statutes (1979), to establish by ordinance the hours when alcoholic beverages can be sold but also with appellant's rights for the balance of the license year, which ended on September 30, 1980.
[7] The decision rendered by the supreme court in Gradison resulted from this court's certification in IDS Properties, Inc. v. Town of Palm Beach, 279 So.2d 353 (Fla. 4th DCA 1973), of a question of great public importance; to wit, whether a zoning ordinance adopted after a public hearing is rendered invalid because of the nonpublic activities of a citizen's planning committee established by the town. In answering the question affirmatively, the supreme court expressly approved the decision of this court, which had held the ordinance void.
[8] We observe that by the issuance of our mandate, the stay order entered by the trial court in this case, which has come to our attention by virtue of our consideration of Playpen South, Inc. v. City of Oakland Park, Case No. 82-204, will terminate, placing all three of the establishments whose appeals are concluded today in the same position as to their hours of closing.