462 So.2d 515 (1985)
Joe YARBROUGH, Mayor of the City of Perry; Byrum Whitfield, Thomas Demps, Joe Nola and T. Anderson Bowdoin, Constituting the City Council of the City of Perry, Florida, Appellants,
v.
Earl W. YOUNG, W.H. Bolton, Vincent Dirubbio, Ralph Clark, J. Herschel McClellan, Jerry D. Dickert, John E. Loughridge, Bishop Clark, Jacob M. Sanhein, Robert D. Sayers, Joe R. Roberts and D.L. Frith, Appellees.
No. AY-182.
District Court of Appeal of Florida, First District.
January 3, 1985.
Rehearing Denied February 8, 1985.
*516 Isadore F. Rommes, Jr., Perry, W.O. Birchfield, Martin, Ade, Birchfield & Johnson, Jacksonville, for appellants.
Don Dansby, Perry, for appellees.
ERVIN, Chief Judge.
This is an appeal from an order finding that certain actions of the Perry City Council (Council) violated Florida's "Sunshine Law". Section 286.011, Florida Statutes. We reverse.
For several months before October 1983, the City of Perry (City) considered renovating and upgrading certain aspects of its utility system. The City contracted with a private engineering firm to make a preliminary report and recommendations. The report's first draft recommended a utility improvement program costing 1.3 million dollars. Several drafts and months later, the City gave public notice  a posted agenda outside of city hall  of a regular Council meeting to be held on October 25, 1983. The posted agenda included an update by the City Manager on the revenue bond issue to finance the proposed utility system improvements. At the October 25th Council meeting, however, the City Manager stated that his update was not ready. The mayor then announced that the update would be placed on the agenda of a special Council meeting to be held on October 28, 1983. At the October 25th Council meeting, no Council member or city official mentioned any dollar amount regarding the utility system improvements.
Immediately after the October 25th Council meeting, the mayor announced the upcoming October 28th Council meeting's agenda on a local radio station. Also, on October 26, 1983, the City posted the agenda for the October 28th meeting outside of city hall, which stated that one of the three items to be covered included "Council review and approval of agreement between the City of Perry and bond underwriters and bond counsel for revenue utility bond issue." The agenda stated no dollar amount. Additionally, the City hand delivered copies of the agenda to local media.
On October 27, 1983, the Taco Times, Perry's twice-weekly newspaper, published an article regarding the October 28th special meeting, wherein it was twice stated that the utility system improvements to be discussed were worth 1.3 million dollars. The article's reporter had attended the October 25th meeting. During the final hearing below, the reporter testified that she had used the 1.3 million-dollar amount since it was the sum she believed had been stated in previous engineering reports. The City Manager never told the reporter an amount for the utility system improvements other than 1.3 million dollars. There was no evidence adduced that the Council or City Manager misled the reporter.
On October 27, 1983, the engineering firm submitted a 40-page updated draft  at least the eighth update  of its preliminary report to the Council. The updated report recommended that the City formally adopt the report as the City's master plan for utility system improvement, and set the total cost at 8.8 million dollars. The City Manager testified below that inflation and the combination of other utility system projects contemplated since 1981 caused the increase to the 8.8 million figure. Prior to October 28, 1983, the mayor had discussed the 8.8 million-dollar amount in private meetings with the City Manager, the City Attorney, the City Engineer and a banker. Also, the City Manager admitted to discussing the larger amount with the *517 City's professional staff before October 25, 1983.
On October 28, 1983, the Council met as scheduled with all commissioners except one. The city staff and two reporters were also present. After the private engineers reviewed the updated preliminary report, the Council unanimously adopted the report as the City's master plan for utilities improvement. Following discussion, the Council also authorized the City Manager to sign an agreement between the City, bond underwriters and bond counsel. The Council planned a revenue bond issue of 8.8 million dollars for financing the utility system improvements. The October 28th meeting was the first time that the 8.8 million-dollar amount was mentioned at a public meeting. At a later meeting, the Council adopted a utility bond ordinance, providing for the issuance of 8.8 million dollars of capital improvement revenue bonds. The adoption of that ordinance is not at issue in this appeal.
Appellees filed suit, claiming that the Council's actions, regarding the utility system improvements, during the October 28, 1983 meeting, violated the Sunshine Law. The trial court agreed and declared that the Council's approval of the utilities improvement master plan and the contracts between the City, bond counsel and underwriters were not binding. Despite finding that the public had notice of the October 28th meeting and its agenda, the trial court reasoned that since the 1.3 million-dollar amount stated in the newspaper article was so disparate from the amount the Council approved, the Council should have postponed deliberations until the public could have received accurate information. We find no violation of the Sunshine Law.
The Law does not expressly require reasonable public notice for a City Council to hold a "public meeting". The better view, however, is that reasonable notice is mandatory, although a posted agenda is unnecessary. Hough v. Stembridge, 278 So.2d 288 (Fla. 3d DCA 1973). The record in the instant case reflects that the City gave reasonable notice. The presence at the October 28th meeting of all but one commissioner (the absent commissioner did receive notice), city staff and two members of the local media indicates the effectiveness of the City's notice.
The order on appeal concentrates on the difference between the 8.8 million-dollar amount actually approved by the Council and the 1.3 million-dollar amount mentioned in the October 27th newspaper article. That article, however, was not part of the City's official notice efforts. Moreover, the City had no duty to give notice by paid advertisements of its intention to act on the utility improvements.[1] We believe that forcing a public body to postpone deliberations on a given topic, despite the giving of reasonable public notice, because of an inaccurate press report, is not only unnecessary under the Sunshine Law, but also unreasonable.
Although the actions at issue suggest that there was at least one secret Council meeting, there is nothing in the record revealing that an official act of the Council preceded the October 28, 1983 meeting, or that the Council members privately met to reach a final decision. The Council's apparently limited review and discussion of the updated engineering report at the October 28th meeting does not by itself indicate a Sunshine Law violation. Occidental Chemical Company v. Mayo, 351 So.2d 336, 341-42 (Fla. 1977). In fact, the record reflects that the Council had reviewed several prior drafts of the engineering report during the previous two years. Even if there had been a prior secret meeting, such a technical violation would not invalidate the Council's actions at the duly noticed and public October 28th meeting. Tolar v. School Board of Liberty County, 398 So.2d 427, 429 (Fla. 1981). Without evidence that the formal actions taken at the October 28th meeting were a *518 "perfunctory ratification of secret decisions", Tolar, 398 So.2d at 429, we cannot sustain the invalidation of the Council's actions. See B.M.Z. Corp. v. City of Oakland Park, 415 So.2d 735 (Fla. 4th DCA 1982).
REVERSED.
MILLS and ZEHMER, JJ., concur.
NOTES
[1] The legislature has required such notice for certain subjects. See, e.g., Section 166.041(3)(c), Florida Statutes.