652 So.2d 1169 (1995)
PORT EVERGLADES AUTHORITY, Appellant,
v.
INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL 1922-1, Appellee.
No. 94-1331.
District Court of Appeal of Florida, Fourth District.
March 8, 1995.
Rehearing Denied April 27, 1995.
*1170 William R. Scherer and Valerie Shea of Conrad, Scherer, James & Jenne, Fort Lauderdale, for appellant.
Neil Flaxman of Neil Flaxman, P.A., Coral Gables, for appellee.
PARIENTE, Judge.
This appeal arises from a trial court's order entitled "Final Judgment as to the Claims of Plaintiff International Longshoremen's Association (ILA)" against Port Everglades Authority (the Port). The trial court found a violation of the Sunshine Law, section 286.011, Florida Statutes (1991), in the bidding and procurement process for the Port's contract for crane maintenance and, as a result, invalidated the award of the contract by the Port to G.F.C. Crane Consultants, Inc. (G.F.C.).[1] We affirm the trial court's final judgment finding a violation of the Sunshine Law and invalidating the contract awarded. However, we reverse that portion of the trial court's final judgment which retained jurisdiction to consider whether "any aspect of the Port's current contracting process for crane maintenance was tainted by the prior violative procedures."
A violation of the Sunshine Law occurred when the Port's Selection and Negotiation Committee (SNC) excluded other competing bidders from the committee meeting during presentations by competitors. The Port agrees that it would be a violation of the Sunshine Law to allow an agency to exclude competing presenters from a public meeting, whether for reasons of professional courtesy or otherwise. The Port's position is that the procurement officer did not exclude the competing presenters, but requested that the competing presenters voluntarily excuse themselves. The trial court expressly rejected this contention and made detailed findings of fact. We find that the trial court's order was supported by substantial, competent evidence that the actions of the Port amounted to a de facto exclusion of the competitors, especially since the "request" was made by an official directly involved with the procurement process.
We reject the Port's argument that, even if a technical violation of the Sunshine Law did occur, the trial court erred in finding that it required invalidation of the contract awarded as a result of the process. In Town of Palm Beach v. Gradison, 296 So.2d 473, 477 (Fla. 1974), the supreme court held that the "[m]ere showing that the government in the sunshine law has been violated constitutes an irreparable public injury so that the ordinance is void ab initio." See *1171 also Spillis Candela & Partners, Inc. v. Centrust Savs. Bank, 535 So.2d 694 (Fla. 3d DCA 1988) (upholding trial court determination that Dade County Board of Rules and Appeals violated Sunshine Law and invalidating the Board's resulting recommendation) and Blackford v. School Bd. of Orange County, 375 So.2d 578 (Fla. 5th DCA 1979) (overturning school board decision to close school when its decision was made outside of public eye).
The Port asserts that these cases are distinguishable because the meetings here were not "clandestine" and because, even if the Port's practice of requesting competing proposers to remain outside during a competing bid were a violation, it was an innocent, technical one with no prejudice resulting. However, the principle that a Sunshine Law violation renders void a resulting official action does not depend on a finding of intent to violate the law or resulting prejudice. Once the violation is established, prejudice is presumed. See Gradison.
Although a violation can be remedied by the governmental entity, a "cure" did not occur because the SNC, before whom the competitors were excluded, did not reconvene "in the sunshine" before the contract was awarded and the Port did not conduct a full, open hearing on the competing bidders for the contract, before ratifying the Committee's recommendations. See generally Tolar v. School Bd. of Liberty County, 398 So.2d 427 (Fla. 1981). The SNC ranked the bidders on the day of the meeting in which the Sunshine Law violation occurred, November 16, 1992. In this case, unlike Tolar, a separate committee determined the rankings and the Port commissioners ratified their actions. In fact, the trial court expressly found that the commissioners approved the SNC's rankings the very next day, November 17, 1992. Thereafter, the Port conducted negotiations only with the first ranked company, G.F.C. No further discussions concerning the rankings of the bidders occurred in the subsequent meetings. The trial court correctly concluded that the Port failed to effectuate a cure of the violation by independent action in the sunshine, even though it had the opportunity to do so and was aware of the violation. Compare Monroe County v. Pigeon Key Preservation Foundation, Inc., 647 So.2d 857 (Fla. 3d DCA 1995); BMZ Corp. v. City of Oakland Park, 415 So.2d 735 (Fla. 4th DCA 1982).
We next turn our attention to the portions of the final judgment wherein the trial court retained jurisdiction to monitor the ongoing contracting process. The Port brought this appeal as an appeal of a non-final order in favor of the party seeking affirmative relief pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv), but asks us to review those portions of the final judgment, paragraphs three and four, wherein the trial court retained continuing jurisdiction. The April 19, 1994 final judgment provided that:
1. Final Judgment is entered in favor of Plaintiff, International Longshoreman's Association, Local 1922-1, and against Defendant, Port Everglades Authority, in accordance with the Court's Order of August 18, 1993 and November 10, 1993;
2. The Court retains jurisdiction to entertain any parties' Motion for an award of attorney's fees and costs;
3. The Court retains jurisdiction to consider the single remaining issue raised by the ILA in its March 4, 1994 Motion for Injunctive Relief: i.e. the allegation that the Port made a payment to GFC which was not for necessary crane maintenance at Southport;
4. The Court retains jurisdiction to consider any claim that any aspect of the Port's current contracting process for crane maintenance was tainted by the prior violative procedures; and
5. Nothing in this judgment should be considered as injunctive. (Emphasis added).
If we treat this as a non-final appeal of an order determining the issue of liability, we would be limited to reviewing the issue of liability. It would then be premature for us to determine whether the trial court, in this "final judgment," improperly retained jurisdiction. However, because we agree with the Port that the litigation regarding the single Sunshine Law violation had been concluded, *1172 we consider this case as a plenary appeal from a final judgment as between the Port and ILA.[2]
The test employed to determine the finality of an order is "whether the order in question constitutes an end to the judicial labor in the cause and nothing remains to be done to effectuate a termination of the cause as between the parties directly affected." S.L.T. Warehouse Co. v. Webb, 304 So.2d 97, 99 (Fla. 1972); see generally McGurn v. Scott, 596 So.2d 1042 (Fla. 1992). Once a judgment becomes final, the trial court ordinarily loses jurisdiction to entertain further proceedings other than those brought for the limited purposes of enforcement of its order. See Volume Servs. Div. of Interstate Corp. v. Canteen Corp., 369 So.2d 391, 395 (Fla. 2d DCA 1979).
A summary of the procedural history of the case and the trial court's orders is helpful in determining whether the initial controversy between ILA and the Port was concluded by the trial court's final judgment of April 19, 1994 and in determining the propriety of the court's actions in retaining continuing, open-ended jurisdiction over the parties. Prior to the entry of the "final judgment" dated April 19, 1994, the trial court, by order dated August 18, 1993, had granted ILA's motion for summary judgment and stated in its order that it would hold an evidentiary hearing on an expedited basis to determine the remedy to be afforded as a result of the violation.
The trial court held an evidentiary hearing regarding the remedy on September 28 and 29, 1993. Following the hearing, in an order entered November 10, 1993, the trial court invalidated the award of the crane maintenance contract to G.F.C. The Port was ordered "to maintain the status quo and not further implement the aforementioned contract beyond the present operation at South Port" and was "enjoined from making payments on the contract, other than for necessary crane maintenance work at South Port." The Port contends that this November 10, 1993 order did not enjoin the Port from initiating a second bidding process free of the procedures held to have been violative. We agree that the November order prohibited further action only in connection with the invalid contract.
On January 11, 1994, the Port proceeded with re-bidding by publishing requests for proposals (RFP) for crane maintenance. On March 4, 1994, ILA filed a "motion for injunctive relief and enforcement of terms of court order of November 10, 1993." ILA claimed that the Port was in violation of the court's order by proceeding with the second bidding process and also by making an unauthorized payment to G.F.C. ILA requested the following relief:
A. That this court enforce the terms of the November 10, 1993 order;
B. That this court enter mandatory injunctive relief by requiring the Port to recapture from G.F.C. monies paid in violation of this court's order;
C. That this court enter injunctive relief requiring the Port to delete from consideration in the proposal submitted by G.F.C. its experience and training obtained at Port Everglades under the invalid contract.
The Port objected immediately to this motion for injunctive relief claiming the issues raised by ILA were in excess of the court's jurisdiction and in excess of the relief originally requested by ILA.[3] On March 11, 1994, the trial court declared "any action in connection with proceeding further on that RFP that was issued will be deemed contempt of this court's [November] order, punishable by any and all appropriate sanctions." The trial court, however, did not enter an *1173 order but defined the remaining issues as attorney's fees to be awarded to ILA and the two issues raised by ILA's motion for injunctive relief. The Port then filed a motion to dissolve the injunction, arguing that the de facto injunction was not based on findings or rulings made in accordance with the Rules of Civil Procedure.
At the final hearing held on April 12, 1994, the trial court announced that "the portion of the case dealing with the ILA and the Port in connection with the violation of the Sunshine law would appear to be concluded subject to any claims for attorney's fees and costs." The trial court advised the Port that it could proceed with the contract award process. This oral direction was contradictory to the trial court's oral pronouncement in March prohibiting the Port from proceeding with the contract award process. However, at the conclusion of the hearing, the trial court stated:
I'm going to consider [ILA's] argument. But in considering that, I don't want to necessarily stop any proceedings at this point in time. That can always be addressed, if I find myself persuaded, at another juncture.
This is the backdrop for the court's entry on April 19, 1994 of the final judgment which is the subject of the appeal in which it retained continuing jurisdiction to monitor the bidding process while, at the same time stating that "nothing in this judgment should be considered as injunctive."
The Port does not dispute that the trial court had the power, under the Sunshine Law, to enjoin the Port from future violations of the same nature. Both the statute and case law support the court's ability to issue limited injunctive relief of this nature. § 286.011(2); Board of Public Instruction of Broward Co. v. Doran, 224 So.2d 693, 699-700 (Fla. 1969). As stated in Doran, while a court cannot issue a blanket order enjoining any violation of the Sunshine Law on a showing that it was violated in particular respects, a court may enjoin a future violation that bears some resemblance to the past violation. The future conduct must be "specified, with such reasonable definiteness and certainty that the defendant could readily know that it must refrain from doing without speculation and conjecture." Doran, 224 So.2d at 699.
Here the trial court unintentionally placed the Port in a quandary. While not enjoining any specific future acts, the trial court first ordered the Port to maintain the status quo. Then, without providing any guidance for the re-bidding process, the trial court retained jurisdiction to determine if any aspect of the present contracting process was tainted by the prior violative procedures. This retention of jurisdiction was not only beyond the relief originally sought; it was also beyond the specific relief sought by ILA in its March 4, 1994 motion for injunctive relief.
In City of Miami Beach v. Klinger, 179 So.2d 864 (Fla. 3d DCA 1965), the court considered a similarly broad retention of jurisdiction in connection with a bidding process conducted by the City of Miami. There, a citizen/taxpayer who was interested in bidding on the proposal, but who did not do so, filed a complaint for declaratory relief demanding a declaration of his rights under the terms of the bid proposal or a decree that the contract procured in connection with the bid was null and void. Id. at 865. After a final hearing, the trial court entered a final decree:
(1) declaring the agreement to be in violation of the Charter of the City and null and void; (2) enjoining the parties from acting under the agreement; (3) ordering the City to prepare appropriate specifications if it desired to resubmit the concession agreement for bids, and (4) reserving jurisdiction of the cause for the entry of such further orders as might accord with equity and justice.
Id. at 866. The appellate court held that the third and fourth items of the decree were to be stricken. The court stated that:
This relief was beyond that sought by the complaint. We see no reason for the court to involve itself further in the affairs between the City and its prospective bidders by a retention of jurisdiction in this cause. We therefore find that this portion of the decree goes beyond the issues framed in the pleadings and by the parties *1174 and is not necessary or proper to the ultimate disposition of this cause. We therefore modify the final decree by striking therefrom the above-quoted portion, and affirm the remainder of the decree.
Id. at 867 (emphasis added).
ILA asserts that section 86.061, Florida Statutes (1991), the supplemental relief section of the Declaratory Judgment Act, authorizes the trial court's assertion of continuing jurisdiction. Supplemental relief can only be granted to the extent necessary or proper to the disposition of the pending case. The only violation found in this case was the exclusion of bidders from each other's presentation, a practice that had apparently been traditional for some time. The Port agreed to eliminate that practice in the future. Despite this fact, the trial court first ordered it to maintain the status quo, threatening to hold the Port in contempt when it proceeded with the second bidding process. Then, in an apparent contradictory ruling, the trial court advised the Port that it could proceed with its bidding process, while retaining jurisdiction presumably to oversee the process.
We agree with the Port's argument that this retention of jurisdiction leaves the Port at the peril of an open-ended review with no articulated standards. We find this retention of jurisdiction in paragraph four to be overly broad and well beyond what was necessary to remedy the single violation. Doran makes it clear that the specificity requirement applicable to injunctions emanates from due process considerations. Beyond that, we simply find no justification, considering the nature of the single Sunshine Law violation, for continuing, open-ended jurisdiction to monitor the bidding process.
The trial court exceeded its authority by retaining ongoing supervisory jurisdiction over the Port's current contracting process. We therefore strike paragraph four from the trial court's final judgment. However, the trial court has jurisdiction to consider the limited matter in paragraph three directed to whether an improper payment was made to G.F.C. because that matter would be incident to the enforcement of the court's remedy of voiding the contract award with G.F.C. Accordingly, we affirm the final judgment, except for paragraph four, which we direct be stricken from the final judgment.
AFFIRMED IN PART; REVERSED IN PART.
STEVENSON, J., concurs.
STONE, J., concurs in part and dissents in part with opinion.
STONE, Judge, concurring in part and dissenting in part.
With respect to the sunshine law violation, I concur in the conclusion that the manner in which the parties were requested to leave the committee room in this case was a "de facto" exclusion, of at least two of the three bidders, during the competing presentations. I would clarify, however, that we have not decided in this opinion that simply affording competing presenters an opportunity to voluntarily excuse themselves during the others' presentations is, in and of itself, a violation of the sunshine law where the parties understand that it is voluntary and that they have a right to remain present without adverse consequences. Unlike the majority, I do not consider it significant that the "request" in this case was made by an official directly involved. I do concur with the majority's conclusion that it was error, on these pleadings, for the trial court to assume continuing jurisdiction.
However, I do not agree with the conclusion that the violation of law in the committee proceedings was not cured by the subsequent port commission hearings. On this record, I cannot say that the port commission's action was akin to a perfunctory ratification of a secret meeting or a ceremonial acceptance of a secret decision. See generally Tolar v. School Bd. of Liberty County, 398 So.2d 427 (Fla. 1981).
There was ample opportunity here for protest, and for the commission to review and reject the committee's ranking of bidders. See Tolar; Monroe County, Florida, Pigeon Key Preservation Found., Inc. v. Pigeon Key Historical Park, Inc., 647 So.2d 857 (Fla. 3d DCA 1995). See also B.M.Z. Corp. v. City of Oakland Park, 415 So.2d 735 (Fla. 4th DCA 1982). The commission had the ultimate authority *1175 to rank the bidders, to re-rank them, or to go forward or step back in the bid negotiation process. The record reflects that the commission had the opportunity to review any and all of the several issues raised in protests by competing bidders or, as here, other interested parties. The commission was even made aware of the claimed violation of the sunshine law. I would therefore reverse on the merits as well as with respect to the retention of jurisdiction.
NOTES
[1] ILA brought this action as a member of the public and as a labor union whose members were affected by the Port's bidding process. ILA is a labor organization whose members are employed at Port Everglades performing crane maintenance work. Apparently G.F.C. does not employ ILA labor.
[2] The issue of the liability, if any, of the Port or the individual commissioners under the contract executed with G.F.C. had been left open by the trial court's order of November 10, 1993. The trial court required that G.F.C. be named as an indispensable party. As of the April 1994 order, the issues between G.F.C. and the Port had not been resolved and those issues are not before us.
[3] The Port further alleged that while ILA was belatedly attempting to challenge the second bidding process which it had been aware of since January, one of the other bidders who employed ILA labor had filed an administrative protest contending that G.F.C.'s experience under the invalidated contract should not be considered. Therefore, this matter was being adjudicated in administrative proceedings.