2000 OK 69

**OKLAHOMA STATE SENATE,**
**Intervenor/Appellant,**

v.

**STATE BOARD FOR PROPERTY &**
**CASUALTY RATES, Administrative**
**Tribunal/Appellee.**

**National Council on Compensation**
**Insurance, Real Party in**
**Interest.**

**W.A. "Drew" Edmondson, Attorney**
**General of Oklahoma.**

No. 93,774.

Supreme Court of Oklahoma.

Sept. 26, 2000.

Mark H. Ramsey, Lee Slater, Marjorie McCullough, Oklahoma City, Oklahoma for Oklahoma State Senate.

Larry Derryberry, Gladys E. Cherry, Gary L. Levine, Derryberry, Quigley, Solomon & Naifeh, Oklahoma City, Oklahoma for National Council on Compensation Insurance.

Stephen Lynn McCaleb, Oklahoma Insurance Department, Oklahoma City, Oklahoma for State Board for Property & Casualty Rates.

SUMMERS, Chief Justice:

¶ 1 The Oklahoma State Senate brings this appeal from an order of the State Board for Property and Casualty Rates denying the Senate's application to intervene and motion to postpone the hearing in a rate proceeding pursuant to 36 O.S.1991, § 901.4. The sole question before us is whether the Board's adoption of the scheduling order for the rate proceeding, particularly the deadline for filing an application to intervene, violated provisions of the Open Meeting Act. The merits of the rate increase, which was granted by the Board, is not challenged by the Senate.

We find the Board's action did not violate the Open Meeting Act, and affirm the order of the Board.

I.

THE FACTS AND PROCEDURAL
POSTURE OF THE CASE

¶ 2 On July 15, 1999 the National Council of Compensation Insurance (NCCI), a licensed insurance rating organization, filed an application with the Board for an increase in workers' compensation advisory prospective loss costs pursuant to 36 O.S.Supp.1998, § 901.5. Copies of the filing were sent to the Attorney General, and also to the actuary employed by the Senate, when it was filed. On July 29, 1999 the Senate's actuary requested additional information regarding the filing, which it received from the NCCI on or before August 12, 1999. On August 12, 1999 the Attorney General and the Oklahoma Insurance Department agreed to a proposed scheduling order which set the hearing date for September 28, 1999, and the deadline for filing intervention applications for August 20. Additionally it provided the deadlines for discovery requests and responses, filing and exchanging actuarial reports, pre-hearing conferences, filing motions, submitting witness lists and exchanging pre-filed testimony and exhibits. The scheduling order was placed on the agenda of the Board's August 5 meeting for approval, but the Board did not have a quorum at that meeting, and no action was taken on the order.

¶ 3 On August 12 counsel for the Insurance Department wrote to NCCI, enclosed the proposed scheduling order, and furnished copies to the Attorney General *and the Senate's actuary*. He advised of the absence of a quorum at the August 5 meeting, and that the scheduling order would be up for approval at the next scheduled meeting on August 26, 1999. Counsel stated in his letter that because of the time constraint he thought they should "operate under the assumption" that the Board would approve the scheduling order, and the parties should therefore comply with the dates set out therein. Copies of the proposed scheduling order were also posted on the front door of the Oklahoma

Insurance Department. On August 19 the notice and agenda for the August 26, 1999 meeting was posted on the front door of the Oklahoma Insurance Department. The Notice and Agenda provided that the Board would consider the Scheduling Order.

¶ 4 At the August 26 public meeting, the Board adopted the scheduling order by written order which provided the dates could be changed "for good cause shown." The Board's order noted that the scheduling order had been passed from the August 5 agenda and acknowledged that the intervention deadline was therefore prior in time to the signing, but stated that the dates were still effective. The Senate did not attend the August 26, Board meeting nor did it object, either before or after that meeting, to the Board's consideration or adoption of the proposed scheduling order.

¶ 5 On the afternoon of September 27, 1999, the Senate filed its application to intervene and motion for postponement of the rate hearing set for the next morning. At the hearing on September 28, 1999 the Board considered the Senate's application to intervene and its motion to postpone the hearing for 30 days, and heard arguments of Senate's counsel. The application and motion were denied at that time. A State Senator, however, was permitted to make a presentation on behalf of the Senate during the public comments portion, and the Senate's actuarial draft was submitted to and received by the Board.

¶ 6 On October 7, 1999, the Board's Order which determined the rate proceeding and granted a rate increase effective as of December 1, 1999, was filed. As a "preliminary matter" the Order included the Board's findings regarding the Senate's application and motion.

¶ 7 After filing its petition in error seeking appellate review under 36 O.S.1991, § 937(C), the Senate filed with this Court a motion for a stay, pending appeal, of the December 1, 1999, effectiveness of the Board's order setting the loss cost rate increase. The re-

quested motion for stay was denied by order of this Court on November 16, 1999. A motion to retain the appeal in this Court was filed by the Senate and was granted.

II.

## DOES THE SENATE HAVE STANDING ?

■ ¶ 8 We find the Appellees' contention that the Senate lacked standing under § 901.4(C) to intervene in this proceeding is not persuasive under these facts. Title 36 O.S.1991, § 901.4(C) provides in relevant part:

"Any person aggrieved with respect to a rate filing may make written application to the Board to participate in any hearing called by the Board. If the Board finds the application top be supported by reasonable grounds, it may allow the applicant to appear in person or by counsel."

¶ 9 Appellees argue that because the Senate purchases insurance from the State Insurance Fund and those rates are not set by the Board, the Senate does not have the requisite "personal stake" in the outcome and is therefore not a person "aggrieved" by the Board's decision. In response, the Senate argues that a violation of the Open Meeting Act, such as is alleged to have occurred here, is a public injury, so that proof of a direct, and immediate personal consequence to the Senate of the unlawful action, is not a necessary requisite to bringing the action. It cites *Hilliary v. State,* 1981 OK CR 78, 630 P.2d 791, as well as cases from other jurisdictions in support of this position.[1]

¶ 10 Additionally, the Senate contends that it does come within the scope of § 901.4(C) because in the future the State Insurance Fund may become an affiliate member of NCCI, or the Senate may purchase insurance from private carriers who may be, or may later become, members of NCCI. This issue is controlled by *Oklahoma St. AFL–CIO v. State Bd. for Property and Casualty Rates,*

---

1. *See Channel 10, Inc. v. Ind. School Dist. No. 709,* 298 Minn. 306, 215 N.W.2d 814 (1974); *Miglionico v. Birmingham News;* 378 So.2d 677 (Ala.1979) *Port Everglades Authority v. I.L.A.,* 652 So.2d 1169 (Fla.App.1995); *Black v. Mecca Twp. Bd. Of Trustees,* 91 Ohio App.3d 351, 632 N.E.2d 923 (1993).

1970 OK 3, 463 P.2d 693, 694, where we broadly applied the concept of standing in a rate hearing to include associations which have members that "carry insurance with companies which seek the rate increases, or will be applicants for insurance coverage by such companies."

¶ 11 We conclude that the Senate had standing to seek intervention and litigate the Board's refusal to grant it.

### III.

### THE BOARD'S ACTIONS WERE NOT IN VIOLATION OF THE OPEN MEETING ACT

■ ¶ 12 The Senate contends that the discussions the parties and the Department staff had about the scheduling order were private and informal non-public meetings prohibited by §§ 303 and 306 of the Open Meeting Act, 25 O.S.1991 §§ 301 et seq., and that the Board's August 26 adoption of the intervention deadline was nothing more than a public ceremonial acceptance of that unlawful private decision. The Senate submits that the Board denied its application to intervene because it was filed after the deadline had expired, and that we should reverse that order because it was taken in "willful violation" of the Open Meeting Act, and was therefore an invalid action under § 313. The Senate asserts that the Board's approval on August 26 could not "breathe life" back into the already expired deadline by its retroactive ratification of the tainted agreed schedule.

¶ 13 In support of its position that a violation did occur, the Senate relies on a highly selective quotation of § 306, which it sets forth as follows:

No informal gatherings ' . . . shall be used to decide any action . . . on any matter.

The Senate argues the statute is intended to preclude circumvention of the Open Meeting Act by secret decision-making in private discussions such as the "gathering" in this case. In its reliance on § 306, however, the Senate ignores the fact that the statute applies only

to members of the Board, not to the parties and the Department's administrative staff.

In its entirety § 306 provides:

No informal gatherings or any electronic telephonic communications; except teleconferences as authorized by Section 3 of this act, **among a majority of the members of a public body** shall be used to decide any action or to take any vote on any matter." (Emphasis added.)

¶ 14 The meetings and discussions between the parties and administrative staff do not constitute a "gathering" or "communication" by the Board. The scheduling order was a mere recommendation to the Board prepared by the staff from an agreement of the parties reached at a meeting which was not covered by the Open Meeting Act. Neither the staff nor the parties had any authority, either actual or *de facto*, to make a decision. In *Andrews v. Independent School District No., 29, of Cleveland County*, 1987 OK 40, 737 P.2d 929, 931, we rejected an effort by parents to enjoin a school district from implementing guidelines regarding student extracurricular eligibility which had been prepared for the school board by a committee charged with that responsibility. The parents asserted the guidelines were invalid because the committee had failed to hold open meetings, and that the school board's ratification of the committee's recommendations could not cure the violation of the Act. We found that there was no violation of the Act in need of a cure, as 25 O.S.1991 § 304 does not apply to subordinate entities, such as committees, which have no decision-making authority. We stated that where the "purpose of a committee is purely fact-finding, informational, recommendatory, or advisory with no decision-making authority, the committee is not required to hold open meetings."

¶ 15 The Senate relies on decisions such as *Matter of Order of Declaring Annexation, etc.*, 1981 OK CIV APP 57, 637 P.2d 1270, which are not relevant here, as they concern questions regarding the effect of decisions made in meetings which did violate Open Meeting Laws.

¶ 16 Appellees, NCCI and the Board, correctly maintain that the Senate has failed to

identify any Board meeting which violated 25 O.S.1991 § 306 or any other provision of the Act. They point out that as a threshold matter, violation of the Open Meeting Act requires an unauthorized meeting of a public body. The public policy intended to be served by the Act is set forth in § 302 as follows:

> ... to encourage and facilitate an informed citizenry's understanding of the governmental processes and governmental problems.

¶ 17 To further this policy, 25 O.S.Supp., 1999 § 311(A)(9) of the Act provides:

> In addition to the advance public notice in writing required to be filed for regularly scheduled meetings, all public bodies shall, at least twenty-four (24) hours prior to such meeting, display public notice of said meeting, setting forth thereon the date, time, place and agenda for said meeting ... Such public notice shall be posted in prominent public view at the principal office of the public body or at the location of said meeting if no office exists.

A public body is defined by 25 O.S.1999 Supp. § 304, as:

> ... all boards ... in the state of Oklahoma ... supported in whole or in part by public funds ... It shall not mean the state judiciary or ... administrative staffs of public bodies.

¶ 18 It is undisputed that the only time the Board considered the matter of this scheduling order was at the August 26 public meeting. There is no question raised as to the adequacy of the public notice of that meeting, and it would be futile to do so, for the Board exceeded the notice requirements of the Act. In addition to posting the notice and agenda as required, the Board posted the scheduling order for two weeks prior to the meeting, although it was not required to do so. The approval of the scheduling order had been an agenda item in the August 5 meeting as well. The fact that the August 20 deadline for intervention had passed by the time it was approved at the August 26 Board meeting does not compel a finding of error.

¶ 19 In this regard, the Senate is also unpersuasive in its argument that § 306 was violated by the letter counsel for the Department sent to counsel for NCCI. The lawyer is not a member of a public body and he does not come within the reach of § 306.

### III.

### INTERVENTION IS WITHIN THE DISCRETION OF THE BOARD

¶ 20 Appellees, NCCI and the Department, are correct in their assertion that the Senate had no absolute right to intervene in this proceeding. The Board's decision under the statute to allow or deny intervention is plainly based on the exercise of its discretion. 36 O.S.1991 § 901.4(C). The Senate relies only on its argument that the deadline contravened the Open Meeting Act, and makes no claim that the Board's action was an abuse of discretion under the circumstances. The appellees' point is well taken that separate and apart from any issue of the expiration of the August 20 deadline, the Board did not abuse its discretion in denying the application since, in spite of having sufficient notice, the Senate made no effort to intervene in a timely manner.

¶ 21 We observe that the Board is under statutory command to set hearings and determine rate proceedings in a very expeditious manner, and its failure to do so may result in the filing being deemed approved without a hearing. 36 O.S.1991, § 903(B),(D); see *State ex rel. Turpen v. Oklahoma State Bd. of Property and Casualty Rates*, 1986 OK 54, 731 P.2d 394. The Board was complying with that mandate in setting the hearing for September 28. Establishing the pretrial dates in the scheduling order was an important administrative step in assuring the effectiveness and fairness of the complex investigative process to be adjudicated at that hearing. Those who wish to participate in rate proceedings are, or should be, aware of the inherent time limitations under which these proceedings must commence and end, and the resulting need for prompt action and good faith in preparation and readiness so that these statutory time limitations may be met.

¶ 22 There was no violation of the Open Meeting Act in this proceeding. The order of the Board is affirmed.

¶ 23 HODGES, KAUGER, WATT, BOUDREAU, and WINCHESTER, JJ., concur.

¶ 24 HARGRAVE, V.C.J., concurs in result.

¶ 25 LAVENDER, J., concurs in part, dissents in part.